**SID RICHARDSON CARBON & GASOLINE CO., a Texas Corporation, and Perry R. Bass**

v.

**INTERNORTH, INC., a Delaware Corporation.**

**Civ. A. No. 4–83–534–K.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Sept. 5, 1984.

Kelly, Appleman, Hart & Hallman by Robert C. Grable, Fort Worth, Tex., for plaintiffs.

Miller, Keeton, & Bristow by Robert Brown, Houston, Tex., for defendant.

1. For purposes of this action, the named Defendant "InterNorth," is considered to be the same as "Northern," which is a division of Inter-

## MEMORANDUM OPINION

BELEW, District Judge.

This action is before the Court upon Plaintiffs' Motion for Preliminary Injunction and upon Defendant's Motion to Refer Issues to the Federal Energy Regulatory Commission and for Stay.

### Background

In their Original and First Supplemental Complaints, Plaintiffs/producers have sought declaratory and injunctive relief, as well as money damages from Defendant/purchaser for breach of certain gas purchase contracts.[1]  Under the terms of these two contracts, Defendant is obligated to purchase Plaintiffs' interest in natural gas produced from five gas wells in Pecos County, Texas, and two wells in Ward County, Texas.

The contracts provide that Defendant is obligated to purchase all of Plaintiffs' interest in the "allowable volume" of gas production from each of the wells subject to the contracts, during each contract year, which is the calendar year.  The pertinent provisions of both of the contracts are as follows:

"13. 'Allowable Volume' means a volume of gas allocated by any duly constituted authority having jurisdiction to any Gas Production Unit of Seller under a valid order prorating gas production." (Art. I, § 31).

"(f) Northern agrees to purchase and receive from Seller during each Contract Year, the Allowable Volume of Gas Well Gas attributable to Seller's interest committed hereunder in all connected and producing Gas Production Units." (Art. IV, § 2[f]).

"(g) Should Northern in any Contract Year fail to purchase and receive all of the Allowable Volume assigned to Seller's Lands committed hereunder and same was available for delivery, then

North and which is sometimes referred to in the contracts that are the subject of this action.

Northern shall pay Seller for the difference between (1) the Allowable Volume attributable during the Contract Year to Seller's Lands, and (2) the quantity of Gas Well Gas actually received by Northern during the Contract Year from Seller's Lands, said difference hereinafter referred to as 'Allowable Deficiency'. Payment for such Allowable Deficiency shall be made at the price in effect hereunder at the end of the Contract Year in which the Allowable Deficiency was incurred." (Art. IV, § 2[g]).

"Section 2. *Payment of Deficient Volumes.* If Northern shall fail in any Contract Year during the term of this Contract to purchase a quantity of gas that Northern is obligated to purchase under the provision of Article IV of this Contract, then Northern shall, within sixty (60) days after the end of such Contract Year, send a statement to Seller showing the amount due Seller by reason of such deficient purchases and Northern shall make payment for such deficient purchases to Seller within twenty-five (25) days after delivery of such statement. Such payment shall be at the price per Mcf in effect hereunder at the end of the Contract Year in which such deficient purchase occurred." (Art. VII, § 2).

The above provisions are commonly referred to as "take-or-pay" clauses, and together they require InterNorth to pay Plaintiffs for a minimum quantity of natural gas. That minimum quantity being their respective interests in the allowables assigned each well by the Railroad Commission, whether taken or not during each contract year.

Plaintiffs have alleged *inter alia* that the Defendant has violated the terms of these contracts, first, by refusing to pay the "allowable deficiencies" incurred for each of the affected wells for the contract year ending December 31, 1982, and, second, by unilaterally implementing a policy of withholding twenty percent of the amount payable to Plaintiff under the contracts for natural gas actually delivered and sold to the Defendant by the Plaintiffs.

It is the latter breach for which Plaintiffs now seek a preliminary injunction. In essence, Plaintiffs have asked this Court to enjoin the Defendant from withholding twenty percent of the amount payable to Plaintiffs for current sales of natural gas under the contracts.

### The Defendant's Motion to Refer and for a Stay

The Defendant has moved for this Court to stay this cause and to refer all the relevant issues involved to the Federal Energy Regulatory Commission (FERC). This Court has concluded that Defendant's motion is not well-founded, and that any delay which would accompany a stay in these proceedings pending a nonbinding decision by a federal agency would be patently unfair to the Plaintiffs. The Court, thus, exercises its discretion in favor of retaining this cause without either referring it to the FERC or staying any of the proceedings.

### The Plaintiff's Motion for Preliminary Injunction

Case law has established a four-part test for determining whether a preliminary injunction should issue under Rule 65(a) Fed. R.Civ.P. Plaintiff must show:

(1) a substantial likelihood that the moving party will prevail on the merits;

(2) a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted;

(3) the threatened injury to the moving party must outweigh the threatened harm the injunction may do to the non-moving party; and

(4) granting the injunction must not disserve the public interest.

*Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430, 435 (5th Cir.1981). As the parties seeking the preliminary injunction, the Plaintiffs in this action bear "the burden of persuasion on all four factors ..." *Id.*

Defendant does not deny that it has refused to either purchase the minimum

quantity of gas or to pay for the gas not taken. Rather, Defendant asserts what appear to be alternative arguments which purportedly justify its actions.

First, Defendant argues that pursuant to Article IV of the contracts, InterNorth has indeed paid Plaintiffs for natural gas not actually received and that such payments were made when InterNorth did not take the "Allowable Volume" of natural gas produced from the wells. Thus, commencing with its December, 1983, invoices, InterNorth began to deduct twenty percent of each month's production from the amounts due Plaintiffs. Defendant maintains that the contracts afford Defendant certain "make-up rights" and that this action was taken pursuant to Article IV, § 2(d) of the contracts. However, Plaintiffs maintain and this Court believes it to be clear that this portion of the contract does not apply to make-up rights. Rather, the make-up rights of the contract are stated in Article IV, § 4(b) which provides:

> If [InterNorth] shall have paid for Gas-Well Gas which it did not receive, it shall have the right, during the five (5) Contract Years immediately following the Contract Year in which [InterNorth] was deficient, to receive all or any part of such quantity of Gas-Well Gas by taking in excess of the quantity it is required to take during such five (5) Contract Years; provided, that [InterNorth] shall pay Seller any difference in price between that upon which payments were made and that applicable at the time of taking the gas.

Defendant's method of making the disputed twenty percent offsets does not follow the contractual make-up procedures. The contractual make-up procedures permit the taking of gas volumes in excess of the minimum quantity required by contract but do not permit dollar deductions for gas actually taken.

It further appears that Defendant has not attempted to follow any of the other make-up procedures provided for in Article IV, § 4. This Court must therefore conclude, for the purposes of Plaintiffs' motion for preliminary injunction, that the contract itself does not provide for the disputed twenty percent offsets.

Defendant's second argument is that take-or-pay clauses are void and unenforceable under the law, notwithstanding the fact that these contracts were negotiated at arms length among parties of relatively equivalent bargaining strengths. Defendant reasons that Plaintiff's sale of gas to InterNorth is a "first sale" of gas within the meaning of the Natural Gas Policy Act, 15 U.S.C. § 3301, *et seq.* [NGPA]. As a "first sale," it is subject to 15 U.S.C. § 3314 which establishes a maximum lawful price ceiling for such gas. Under present market conditions, Defendant argues, the majority of the deficiency payments made by Defendant to Plaintiffs are not made up in subsequent takes of gas in excess of the Allowable Volumes for contract years during the five-year make-up period. Thus, Defendant argues that paying for gas not actually taken elevates the effective price of the gas actually received by Defendant beyond the maximum price permissible under the NGPA. In addition, Defendant argues that even if deficiency payments for gas not actually taken are made up in subsequent years, InterNorth must pay any differential between the price in effect during the year in which the deficiency was incurred and the prevailing price at the time the gas is made up. By that time, Plaintiffs have received the value represented by the use and enjoyment of the interim of the funds earlier paid by Defendant. This "interest factor" allegedly raises the effective price of the gas taken by Defendant under the contracts above the maximum lawful price under the NGPA and thereby renders the take-or-pay clauses illegal and unenforceable.

Thus, Defendant's argument is that its twenty percent offsets are supported by Defendant's equitable or common-law right of offset to recoup prior, allegedly unenforceable and illegal, take-or-pay payments.

Although this creative argument has a certain sophistic appeal, the Court has found no judicial or administrative authori-

ty to support it. What authority the Court has found supports the Plaintiffs' position that take-or-pay clauses do *not* violate the NGPA. *See Southport Exploration, Inc. v. Producer's Gas Company*, No. 83–C–550–BT (N.D.Okla. June 1, 1984). It thus appears to this Court that Defendant's unauthorized twenty percent deduction, which is primarily based upon a claim that take-or-pay provisions are void, is simply a breach of contract and that Plaintiffs have a substantial likelihood of prevailing when this case is tried on the merits.

### Irreparable Harm

Under the Natural Gas Act, Plaintiffs must continue their service to Defendant despite Defendant's breach of contract. If this preliminary injunction were denied, Plaintiffs would have to continue providing as to Defendant but would be denied the current use of the proceeds of production that are necessary for the substantial investment in deep, expensive gas wells, such as the ones covered by the contracts. The Court concludes that such would cause irreparable harm to the Plaintiffs.

### Balance of Equities

The Court concludes that the equities in this case favor the Plaintiffs. A preliminary injunction granted by this Court will not impose any new obligation on Defendant. Instead, it will merely require the Defendant to pay Plaintiffs, as per contractual terms, for gas actually taken by the Defendant. This appears to be particularly fair since most of the gas involved is "old flowing gas" in interstate commerce and is therefore held far below the market clearing price by mandatory federal controls. *See* Section 104 of the NGPA.

In fact, the evidence and testimony adduced at the hearing revealed that the current price paid by Defendant for gas produced from the Price A–1 Well is $.4804/MCF (Plaintiffs' Exhibit 4) and $1.25/MCF for gas produced from the Price B–2 Well (Plaintiffs' Exhibit 5). On the other hand, Defendant's weighted average cost of gas is approximately $2.70/MCF and its weighted average resale price is approximately $3.50/MCF (testimony of Ms. Cole). Thus, it appears that the gas at issue is among the cheapest gas in Defendant's system.

### The Public Interest

It is difficult to determine exactly what is or is not in the public's best interest within the context of a dispute such as the one in the case at bar. Here, the Defendant has apparently decided that it can improve on the bargained for contractual terms in issue. Thus, the Defendant has attempted to rewrite the contracts while knowing that Plaintiffs are prevented by federal law from employing self-help measures to counter Defendant's unilateral actions. The Court therefore concludes that it is in the public's best interest to prevent such planned breaches of contract by a utility, such as the Defendant, who could otherwise breach their contracts and then hide behind the Natural Gas Act.

### Conclusion

Although Defendant has argued that this case is simply a collections lawsuit and that Plaintiffs are therefore not entitled to a preliminary injunction, this Court disagrees. Not only is Defendant refusing to honor the bargained for take-or-pay provisions of the contracts, it is withholding twenty percent of the payments for gas actually produced and taken. As a practical matter, there is nothing but the equitable power of this Court to prevent the Defendant from continuing to receive gas from the Plaintiffs, pursuant to federal law, while withholding one hundred percent of the payments pending trial on the merits.

This Court has therefore concluded that, pending trial on the merits of this case, the Defendant should pay Plaintiffs the applicable price under the contracts for one hundred percent of the natural gas delivered and sold to Defendant by Plaintiffs, without making any deduction to the full amount owed.

An Order for Preliminary Injunction will be issued.