**FOREST OIL CORP., Plaintiff,**

v.

**TENNECO, INC., Defendant.**

**J.E. STACK, Jr., Plaintiff,**

v.

**TENNECO, INC., Defendant.**

Nos. J84–0084(L), E83–0143(L).

United States District Court,
S.D. Mississippi,
Jackson and Eastern Division.

Oct. 31, 1985.

Michael S. McKay and Glenn Gates Taylor, Jackson, Miss., for Forest Oil.

Glenn Gates Taylor, Copeland, Cook, Taylor & Bush, Jackson, Miss., for Stack.

Peyton S. Irby, Jr., John H. Holloman, III, Ernest G. Taylor, Jr., Watkins, Ludlam & Stennis, and Kathryn H. Hester, Jackson, Miss., for Tenneco.

**MEMORANDUM OPINION
AND ORDER**

TOM S. LEE, District Judge.

Before the court are identical motions filed in the above-referenced causes by Tenneco, Inc. (Tenneco) requesting dismissal or stay of further proceedings pending a referral to and decision by the Federal Energy Regulatory Commission (FERC) on

certain matters assertedly central to these lawsuits. Plaintiffs Forest Oil Corp. (Forest) and J.E. Stack, Jr. (Stack) filed timely responses in opposition to the motions, and the parties have supplemented their initial memoranda with frequent submissions to the court concerning the present state of the law in this area. After careful consideration of the updated memoranda with attachments submitted by the parties, and for reasons more fully developed below, this court is of the opinion that the above-referenced causes should not be dismissed or stayed pending a determination by the FERC.

These actions allege a breach by Tenneco of individual gas purchase contracts between Tenneco and Forest and Tenneco and Stack. While there are significant differences between the Forest-Tenneco and Stack-Tenneco contracts, for purposes of this motion the pertinent provisions are sufficiently similar to allow this court to make a single determination on both motions.

Forest and Tenneco executed their gas purchase contract on June 1, 1981. Stack and Tenneco executed their gas purchase contract on March 22, 1982. Under the terms of both contracts, Tenneco agreed to buy all of the gas produced by Forest and Stack from wells in certain fields owned by Forest and Stack in Mississippi. The Forest-Tenneco contract was for a term of ten years. The Stack-Tenneco contract was for a term of fifteen years. Both contracts required Tenneco to pay the respective producer for a minimum quantity of gas on an annual basis. If Tenneco's needs fell below those required in the contracts, Tenneco was required to make a "take-or-pay" payment[1] to the producer for the amount of gas which the producer could have delivered under the terms of the contract. Neither the Forest-Tenneco nor the Stack-Tenneco contract contained an immediately exercisable market-out clause, which is included in many of Tenneco's contracts with other producers, giving it the right to unilaterally reduce the contract price payable to the producer whenever Tenneco considers it necessary to do so in order to keep its resale price competitive and maintain its profit margin. Such immediately exercisable market-out clauses are the product of negotiation between the parties.[2]

In late 1982, Tenneco began experiencing increased deliverability capacity of high-cost gas by some of its producer-suppliers, while at the same time experiencing a reduced demand for the gas it was reselling. In light of this increased supply and diminished demand, Tenneco began exercising its rights under the market-out clauses in the vast majority of its contracts.[3] There remained, however, a number of gas purchase contracts which, like Forest's and Stack's, contained no market-out clauses and which obligated Tenneco to high take-or-pay agreements negotiated under different market conditions. Thus, on April 29, 1983, Tenneco announced that it was unilaterally abrogating various provisions of some of its gas purchase contracts, including Forest's and Stack's, under the terms of its Emergency Gas Purchase Policy (EGPP). Utilizing this EGPP, Tenneco either suspended or construed in its favor contractual provisions concerning price, deliveries, take-or-pay, nomination of gas cat-

---

**1.** A take-or-pay payment is in the nature of a prepayment for gas made available but not actually taken by Tenneco, calculated at a percentage (90% in the Forest-Tenneco contract; 85% in the Stack-Tenneco contract) of the gas which the producer could have delivered during a contract year, reduced by the amount actually taken by Tenneco, with Tenneco paying the difference to the producer.

**2.** Both the Forest-Tenneco and the Stack-Tenneco contracts provided, through the language of a "special redetermination" clause, that Tenneco would be protected by an immediately exercisa-ble market-out clause that would only be effective on and after January 1, 1985. As the alleged contract breaches in these actions occurred during 1983, the "special redetermination" clause has no effect.

**3.** The plaintiffs assert that in late 1982 Tenneco unilaterally modified the price provisions in some 1400 contracts which contained immediately exercisable market-out clauses, leaving some 20 contracts like those with plaintiffs which contained no such clauses.

egories and other related matters. The notices of the implementation of the EGPP that were sent to Forest and Stack contained a further demand that either they accede in writing within one month or Tenneco would terminate their respective contracts. Over the three months following the implementation of the EGPP, some 16 of Tenneco's approximately 3500 producer-suppliers filed suits against it for breach of contract. On July 14, 1983, Tenneco filed its complaint with the FERC requesting a ruling on the propriety of its EGPP, naming Forest and Stack as respondents in FERC Docket No. 83–109. To date, no action has been taken on this matter by the FERC.

In its instant motions, Tenneco argues that these actions should be dismissed or stayed pending determination by the FERC for the following reasons: (1) the major issues in this litigation are now under review by the FERC; (2) the FERC has plenary jurisdiction over the major issues; (3) the doctrine of primary jurisdiction requires at least a stay of this action. Plaintiffs counter that the substantive claims and defenses in these cases present textbook state law contract disputes concerning *inter alia* mutual mistake, impossibility and impracticability of performance, failure of consideration, unjust enrichment and lack of mutuality. Furthermore, plaintiffs argue that the FERC cannot have primary jurisdiction over these actions as they concern the sale of deregulated, deep high-cost gas as such is defined in § 601(a)(1) of the Natural Gas Policy Act of 1978, codified at 15 U.S.C. § 3431(a)(1). The overwhelming weight of authority supports plaintiffs' position.

In *Pennzoil Co. v. FERC*, 645 F.2d 360 (5th Cir.1981), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982), the Fifth Circuit addressed the issue of the FERC's primary jurisdiction over contractual disputes arising from the sale of natural gas covered by the Natural Gas Policy Act of 1978 (NGPA). The court held that NGPA § 601(a)(1)(A) removed certain categories of gas sales from the jurisdiction granted to the FERC by the Natural Gas Act, including gas which qualified as high-cost gas under § 107 of the NGPA that was not committed or dedicated to interstate commerce as of November 8, 1978. 645 F.2d at 380. The court further held that the state or federal court which hears a contractual dispute concerning the sale of gas exempted from exclusive FERC jurisdiction by NGPA § 601(a)(1)(A) is competent to interpret and apply any relevant federal regulations without the need to refer all or part of the case to the FERC. 645 F.2d at 385. This court concludes that the rule announced in *Pennzoil* disposes of Tenneco's argument that the FERC has primary jurisdiction over these contract disputes arising from Tenneco's promulgation of its EGPP. From all that appears in the record before this court, the sale of the gas from the well-heads owned by Forest and Stack falls within the exclusionary language of NGPA § 601(a)(1)(A). Therefore, this court is of the opinion that the FERC has no primary jurisdiction over either of these cases.

Tenneco next argues that even if the FERC is without primary jurisdiction, this court should stay these cases and refer them to the FERC so as to take advantage of the special expertise of the FERC in the area of interstate sale of natural gas. The essence of Tenneco's argument is that its legal defenses to these breach of contract actions necessarily involve a construction of its EGPP, with the court being faced with the task of determining the propriety of such unilateral action in light of the extensive federal regulations in this area. Tenneco asserts that the necessary construction and interpretation of its EGPP can be best performed by the FERC. In response, Forest and Stack cite a virtual litany of cases in which same or similar motions by Tenneco have been rejected by both state and federal courts.[4] The ration-

---

4. By letter dated August 8, 1985, plaintiffs' counsel submitted the following list of cases in which referral-to-FERC motions in breach of gas purchase contract suits brought by producer-suppliers have been denied:

ale in these cases is well stated in an unpublished order by Fifth Circuit Judge W. Eugene Davis, sitting by designation in *Exxon Corp. v. Tenneco, Inc.*, No. 83–1640 (W.D.La. December 16, 1983), affirmed *sub nom* by the Fifth Circuit in *In Re: Tenneco, Inc.*, No. 84–4074 (5th Cir. July 30, 1984):

> FERC closely regulates the price and transportation of the gas which is the subject of the take-or-pay contract in dispute here. Tenneco argues that the interpretation and applicability of those regulations are so intertwined with the contractual disputes that this action should be stayed until the alleged disputes over the regulations related to pricing and transportation can be decided by the agency. The fact that federal regulations may be material to the resolution of a contract dispute clearly does not require the court of general jurisdiction to abstain in favor of a state or federal agency. (citations omitted). The central issue in this case is whether the take-or-pay contracts in dispute have been breached without legal justification. The interpretation of FERC regulations is peripheral to that determination.

Furthermore, it appears that the FERC itself is of the opinion that it has no jurisdiction over the contractual disputes. Plaintiffs have submitted a letter written by Christopher J. Warner, Associate General Counsel to the FERC, to Mississippi Congressman G.V. Montgomery in response to an inquiry on behalf of Stack, wherein Warner states, "[a] review of the information supplied by Mr. Stack appears to indicate that the Commission has no jurisdiction to enforce the terms of this contract ... Questions or disputes involving these non-jurisdictional contracts should be taken to the appropriate state or federal court for resolution." It is undisputed by the parties that the FERC has as yet undertaken no positive action to resolve the issues raised in Tenneco's complaint, and there is no indication that such action will be undertaken in the immediate future.

The combination of these factors compels this court to conclude that the FERC has no primary jurisdiction over these contract disputes and has no special expertise over these issues sufficient to require referral. Additionally, no recognizable interest will be served by further delaying these proceedings pending an initial determination by the FERC as to its own jurisdiction in the EGPP cases, a determination which the FERC is apparently chary of making. Ac-

1.  *System Fuels, Inc., et al v. Tenneco, Inc., et al*, No. 19,494 in the Chancery Court of Marion County, Mississippi, ruling dated July 23, 1985.

2.  *Placid Oil Co. v. Tenneco, Inc.*, No. 82–3566–E (15th Judicial District of Louisiana), denial of motion affirmed by the Louisiana Court of Appeals and the Supreme Court of Louisiana, order dated March 9, 1984.

3.  *Texaco, Inc. v. Tenneco, Inc.*, No. 83–3211–A (15th Judicial District of Louisiana), denial of motion affirmed by the Louisiana Court of Appeals and the Supreme Court of Louisiana, order dated March 9, 1984.

4.  *Amoco Production Co. v. Tenneco, Inc.*, No. 84–42 (15th Judicial District of Louisiana), denial of motion affirmed by the Louisiana Court of Appeals and the Supreme Court of Louisiana, order dated March 9, 1984.

5.  *Shell Oil Co. v. Tenneco, Inc.*, No. 83–5480–G (15th Judicial District of Louisiana), order dated February 28, 1984.

6.  *Exxon Corp. v. Tenneco, Inc.*, No. 83–1640 (U.S.D.C., W.D.La.), *aff'd sub nom, In Re: Tenneco, Inc.*, No. 84–4074 (5th Cir. July 30, 1984).

7.  *Koch Industries, Inc. v. Columbia Gas Transmission Corp.*, No. 83–990–A (U.S.D.C.M.D. La.), *aff'd sub nom, In Re: Columbia Gas Transmission Corp.* No. 84–3282 (5th Cir. July 30, 1984).

8.  *Sampson Resources v. Northern Natural Gas Co.*, No. 82–C–1214–E (U.S.D.C.N.D.Okla.), order dated November 21, 1983.

9.  *Southport Exploration, Inc. v. Producers Gas Co.*, No. 83–C–550–BT (U.S.D.C.N.D.Okla.), order dated March 13, 1984.

10.  *Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F.Supp. 497 (U.S.D.C.N.D. Texas), order dated September 5, 1984.

11.  *Kaiser-Francis Oil Co. v. Producers Gas Co.*, No. 83–C–400–C (U.S.D.C.N.D.Okla.).

12.  *The Superior Oil Co. v. Transco Energy Co.*, 616 F.Supp. 98 (U.S.D.C.W.D.La.), order dated February 11, 1985.

13.  *Exxon Corp. v. Columbia Gas Transmission Corp.*, No. 83–1586–L (U.S.D.C.W.D.La.), order dated March 26, 1985.

14.  *Marion Corp. v. United Gas Pipeline Co.*, No. 83–1192–C (U.S.D.C.S.D.Ala.), order dated May 2, 1985.

15.  *Danden Petroleum v. Northern Natural Gas Co.*, 615 F.Supp. 1093 (U.S.D.C.N.D.Texas), order dated August 14, 1985.

cordingly, this court is of the opinion that these proceedings should not be dismissed or stayed pending a determination by the FERC in docket No. 83–109.

It is, therefore, ordered that Tenneco's motion to dismiss or to stay proceedings and refer issues to the FERC is denied in both of the actions before the court.