RESOURCES INVESTMENT CORPORA-
TION, a Colorado corporation, Re-
source Capital Corporation, a Colorado
corporation, and Energy Management
Corporation, a Colorado corporation,
Plaintiffs,

v.

ENRON CORPORATION, a Delaware
corporation, and Northern Natural Gas
Company, a Delaware corporation, De-
fendants.

Civ. A. No. 87–K–678.

United States District Court,
D. Colorado.

Sept. 10, 1987.

James M. Piccone and Gail L. Wurtzler, Davis, Graham & Stubbs, Denver, Colo., for plaintiffs.

Peter A. Bjork, Poulson, Odell & Peterson, Denver, Colo., W. Robert Brown and Thomas C. Wright, Miller, Keeton, Bristow & Brown, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action for breach of contract. I assume jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(a).

Plaintiffs have instituted this action alleging non-performance of 32 contracts executed over a period of 18 years. These contracts concern gas reserves in three states—Texas, Oklahoma and Kansas[1]. The contracts all contain terms creating what are known as "take-or-pay" obligations. Defendants undertook to purchase a specified quantity of gas each year. If in any year defendants did not accept delivery of the specified amount, the deficiency in purchases would nonetheless be paid for. Provision was made for gas paid for but not used to be carried forward to subsequent years.

Plaintiffs now allege defendants have failed since July, 1980 to comply with the terms of the contracts. They claim damages and seek a declaration that defendants are obligated in the future to perform the take or pay obligations.

Defendants respond asserting fourteen affirmative defenses and ten counterclaims. The matter is before me on plaintiffs' motion to dismiss the counterclaims and to strike all but the first, second, thirteenth and fourteenth affirmative defenses. This motion is granted in part.

## I PUBLIC POLICY

The second counterclaim and the seventh affirmative defense posit the claim that the take or pay obligations contained in the

1. The parties have submitted no argument on the point, tacitly they accept the laws of these three states to govern the various contracts. On such a basis I shall proceed throughout this opinion.

contracts are contrary to public policy. This claim has two limbs. First, it is argued the provisions would impose an unjustifiable burden upon defendants, and would result, amongst other alleged effects, in an escalation in the price of gas. This they assert will inevitably harm not only themselves, but also other pipelines and the general body of consumers. Second, defendants maintain the provision contradicts the public policy embodied in the Natural Gas Policy Act of 1978.

■ First, the specific claim based on the policy of the Natural Gas Act is misplaced. Defendants simply assert the act was designed to protect the consumer and ensure that it receives an adequate supply of gas at the lowest reasonable price. To this end they seek to rely upon the decision of the Supreme Court in *Transcontinental Pipe Line v. State Oil and Gas Board of Mississippi and Coastal Exploration, Inc.*, 474 U.S. 409, 106 S.Ct. 709, 88 L.Ed.2d 732 (1986).

This authority is not helpful. The court simply stated "the aim of federal regulation remains to assure adequate supplies of natural gas at fair prices, but the NGPA reflects a Congressional belief that a new system of natural gas pricing was needed to balance supply and demand", 474 U.S. 409, 421, 106 S.Ct. 709, 716, 88 L.Ed.2d 732, 743. One does not deduce a rule to the effect that a private contractual scheme which has the effect of increasing the price of gas to the consumer is necessarily void for non-compliance with the statute[2]. The Tenth Circuit has expressly rejected such a contention, "the fact that prices under intrastate gas contracts.... are high and will continue to rise does not mean these contracts are against federal public policy", *Kerr-McGee Corporation v. Northern Utilities Inc.*, 673 F.2d, 323, 326 (10th Cir.1982) *cert. denied* 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 385 (1982).

Further, a number of other courts have held directly that take or pay clauses in gas contracts do not contravene the policy of the Natural Gas Act, *Southport Explora-*

*tion, Inc. v. Producer's Gas Company*, No. 83–C–550–BT (N.D.Okl. June 1, 1984), *Sid Richardson Carbon & Gasoline Co. v. Internorth, Inc.*, 595 F.Supp. 497, 501 (N.D.Tex.1984), *Koch Industries Inc. v. Columbia Gas Transmission Corporation*, No. 83–990–A (M.D.La. March 14, 1985), *Kaiser-Francis Oil Company v. Producer's Gas Company*, No. 83–C–400–B (N.D.Okl. June 19, 1985). Defendants fail to distinguish these authorities and cite none in favor of the contrary proposition.

■ The second limb of the public policy argument, that the fact the clauses now impose an intolerable hardship upon defendants as a result of the downturn in the natural gas market, thereby providing a basis for nullifying the relevant contractual provisions is similarly without merit. The mere fact of defendants having entered into a series of contracts which now prove to have been improvident—and their argument amounts to no more than this—does not furnish this court with grounds for nullifying same, *Arkansas Natural Gas Co. v. Arkansas Railroad Commission*, 261 U.S. 379, 382–383, 43 S.Ct. 387, 388, 67 L.Ed. 705 (1923). As the court pointed out in *Sid Richardson*, the public interest in contexts such as these in ensuring that parties adhere to the terms of contracts they have entered into far outweighs the purported interest in protecting entities such as defendants from agreements they now perceive to have been unwise. The observations of the fifth circuit regarding such clauses are of relevance in this context.

The purpose of the take-or-pay clauses is to apportion the risks of natural gas production and sales between the buyer and seller. The seller bears the risk of production. To compensate seller for that risk, buyer agrees to take, or pay for if not taken, a minimum quantity of gas. The buyer bears the risk of market demand. The take or pay clause insures that if the demand for gas goes down, seller will still receive the price for the

---

**2.** In fact the relevant Federal Regulations dealing with the Federal Energy Regulatory Commission clearly contemplate and specifically re- fer to these clauses, casting considerable doubt on claims to the effect the NGPA was intended to effect their abrogation, 18 CFR § 271.504(c).

Contract Quantity delivered each year. *Universal Resources Corporation v. Panhandle Eastern Pipe Line Company*, 813 F.2d 77, 80 (5th Cir.1987)

Defendants proffer no real response to this. They argue that on a motion to dismiss, the allegations of economic injury sustained by them as posited in their answer must be accepted by the court. I find no fault with this assertion. The simple fact is that these allegations provide them with no public policy defense to an action of this nature. Defendants second counterclaim is dismissed. The seventh affirmative defense is stricken.

## II STATE CONSERVATION AND PRORATION LAWS

■ In their tenth affirmative defense, defendants claim enforcement of the take or pay provisions would require plaintiff to produce quantities of gas in violation of the applicable state conservation or proration laws. The third counterclaim posits a similar claim. The laws alleged to be so violated are 52 Okla.St.Anno. §§ 231–256, Kan. Stat.Anno. §§ 55–703, Tex.Nat.Res.Code §§ 86.001 *et seq.* and the Texas Railroad Commission Market Demand Order, Rule 051.02.99.001. 16 Tex.Admin.Code § 3.91. Plaintiffs move to strike and dismiss respectively this counterclaim and defense.

This argument was considered and rejected in *Kaiser-Francis.* It was argued the enforcement of the take or pay clause in a similar contract would violate the dictates of 52 Okl.Stat. The court pointed out the statute was simply inapplicable since the contracts do not require production but rather provide for payment in lieu of production. A similar conclusion was posited in *Southport Exploration* regarding the same statutory provisions. I see no basis for concluding that this rationale will not apply to the other statutes cited. Defendants baldly assert the matter is one of interpretation of each of the applicable contracts and that they can prove a set of circumstances under which they would prevail on this point. I am obviously reluctant on a motion of this nature to base its findings on conclusions of fact. In my view, however, the wording of each of the contracts on this point is unambiguous. The tenth defense is dismissed. The third counterclaim is stricken.

## III PENALTY AND UNENFORCEABLE LIQUIDATED DAMAGES CLAUSES

■ In their fourth and fifth counterclaims and their eleventh and twelfth affirmative defenses defendants seek to claim the take or pay provisions are either penalty clauses or unenforceable liquidated damaged claims. I agree with plaintiffs that this argument is misplaced and plaintiff's motion as regards these claims shall be granted.

Once again this contention has been considered and rejected by the other courts to have encountered these clauses. In *Universal Resource Corporation v. Panhandle Eastern Pipe Line Company*, 813 F.2d 77, 80 (5th Cir.1987) n. 4 the court pointed out that the clauses then under consideration were promises within the agreement and not a measure of damages after the breach. A similar conclusion was reached in *Koch Industries*, p. 1040 ("the take or pay requirements constitute two primary obligations—alternative obligations under Civil Code articles 1808–1812—and are not in the nature of a primacy obligation of taking or paying and a secondary or accessory obligation of paying if no gas is taken"), and see also *The Superior Oil Company v. Transco Energy Company et al.*, 616 F.Supp. 98, 108 (D.C.La.1985). Further, the Tenth Circuit has made clear its view that take or pay contracts impose alternative obligations, *International Minerals and Chemical Corporation v. Llano Incorporated*, 770 F.2d 879, 885 (10th Cir. 1985), *cert. denied* 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 310 (1986).

Defendants in their response again misconceive the role of this court in entertaining motions to dismiss. They argue that in their answer to plaintiffs' complaint they have alleged the penalty imposed by the contracts is disproportionate to the amount of damages that could have been anticipated. Accordingly, they claim, the court must accept this as being true. The ques-

tion I am deciding here is not the truth or otherwise of the allegations made by defendants, but whether they constitute a defense in law to the claims made against them. *International Minerals* points clearly to the conclusion that they do not. Defendants' fourth and fifth counter-claims are dismissed. The eleventh and twelfth affirmative defenses are stricken.

## IV UNCONSCIONABILITY

■ The sixth counterclaim and ninth affirmative defense propose that the take-or-pay obligations are unconscionable under section 2–302 of the Uniform Commercial Code [3]. This provision reads in material part as follows

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result.

Defendant's allegations of unconscionability revolve around the notion that, if enforced, the terms of the contracts in question would force defendants to take quantities of gas in excess of the market demand for that gas thereby imposing an "unreasonable, unfair and oppressive burden" upon defendants. As the Tenth Circuit has made clear, however, applying Utah law, this type of economic remorse will not provide the basis for an allegation of unconscionability, "an increase in price has nothing to do with unconscionability", *Berina Distributors, Inc. v. Berina Sewing Machines*, 646 F.2d 434, 440 (10th Cir. 1981).

Further, in *Berina*, the court made clear it was an essential element of an unconscionability claim that "proof must show the contract is 'so one-sided as to be unconscionable under the circumstances existing

*at the time of making of the contract'*" (Citing Uniform Commercial Code section 2–302, comment 1, emphasis in original) [4], 646 F.2d at 440 and see *Kerr-McGee*, 673 F.2d at 330. I am satisfied this represents the law of Kansas, (*Transamerica Oil Corporation v. Lynes, Inc.*, 723 F.2d 758, 764 (10th Cir.1983), applying Kansas law), Texas (*Wade v. Austin*, 524 S.W.2d 79, 86 (C.A.Tex.1975)) and Oklahoma (*Phillips Machinery Company v. LeBlond Inc.*, 494 F.Supp. 318, 323–324 (D.C.Okl.1980)). No allegation to this effect is made anywhere in defendants' answer. I find it fanciful to believe they can adduce evidence to the effect that a clause which they constantly repeated in 32 contracts over an eighteen year period was on any or each occasion induced by unconscionable conduct. I note also that this was the conclusion reached in *Louisiana Gas System, Inc. v. Tee Oil, Inc., et al.*, No. 86–2594 (D.C.La. July 1, 1987) [Available on WESTLAW, DCT database]. Defendants have quite simply no response to this. The sixth counterclaim is dismissed. The ninth affirmative defense is stricken.

## V MISTAKE

■ The eighth counterclaim and fifth affirmative defense seek to propose a claim for mutual mistake. The alleged mistake in question relates to "the facts concerning the natural gas industry and the conditions under which the take-or-pay make-up provisions would operate". The claim effectively being made by defendants is that at the time of execution of the contracts in question, they did not appreciate the extent to which the economic balance within the natural gas market would subsequently alter, "at the time of execution of the Contracts, the parties erred in their assumption that the take-or-pay provision would operate under normal market demands and conditions". Mistaken predictions of future economic conditions, however, will not facilitate relief from contractual obligations,

---

**3.** The provision is incorporated directly into the laws of Texas, Oklahoma and Kansas, Tex.Bus. & Com.Code Ann. § 2–302, Title 12A Okla.St. Anno. § 2–302 and Kan.Stat.Anno. § 84–2–302.

**4.** The passage cited in *Berina* from the Official Comment to the Uniform Commercial Code appears in the comments to the relevant Kansas, Texas and Oklahoma statutes.

*Tony Downs Foods Co. v. United States,* 530 F.2d 367, 373, 209 Ct.Cl. 31 (1976), cited in *Great Plains,* at p. 835 and approved in *Berina.* "A person cannot rescind a contract merely because, in the light of subsequent developments, a provision thereof operated to his disadvantage.", *Boyles v. Thompson,* 585 S.W.2d 821, 820 (C.A.Tex. 1979). See also *Universal Resources,* 813 F.2d 77, 80. Defendants respond to this by stating they can prove a set of facts which will entitle them to relief on the basis of mistake. Yet, all of these facts are dependent upon the validity of the claim that the economic misjudgment in question here provides in law a basis for the doctrine of mistake. This counterclaim and defense are dismissed and stricken respectively.

## VI FRUSTRATION, IMPOSSIBILITY AND FORCE MAJEURE

In their first[5], seventh, ninth and tenth counterclaims and fourth, sixth and eighth affirmative defenses defendants argue that events since the execution of the contracts excuse their breach of the contracts in question. This argument assumes a number of forms. Defendants seek to claim price-induced energy conservation, foreign commodity competition, abnormally warm weather during a number of the heating seasons, an economic recession, an unforeseeable change in the natural gas market and the enactment of regulatory state and federal statutes (first counterclaim) resulted in frustration of the underlying contracts (seventh counterclaim and fourth affirmative defense), rendered performance of these contracts impossible or commercially impracticable (ninth counterclaim and sixth affirmative defense) and resulted in suspension of the contracts through the occurrence of a *force majeure* (tenth counterclaim and eighth affirmative defense).

Dealing first with the frustration claim, although plaintiffs seek dismissal of all these claims in their entirety, they take issue in argument only with that element of the frustration defense dependent upon

the changes in the natural gas market. In this they are correct. Here, as in *United States of America v. Great Plains Gasification Associates, et al.,* 819 F.2d 831 (8th Cir. May 19, 1987), the parties clearly contemplated the likelihood of changing economic conditions, including alterations in fuel price levels "and such fluctuation was not the kind of completely unforeseeable event required to invoke the doctrine of frustration of purpose", *Great Plains* at p. 835. "This court will not hold a contract to be frustrated merely because of an increase in cost to one of the parties.", *Ross Industries v. M/V Gretke Odendorf,* 495 F.Supp. 195, 199–200 (E.D.Tex.1980). See also *Universal Resources,* 813 F.2d at 80. This immediately precludes defendants from relying on everything listed above *except* the warm weather and enactment of state and federal regulatory legislation. Insofar as the claims of frustration depend upon these factors listed in the first counterclaim, they shall stand.

Similar considerations govern the claim based upon impossibility and commercial impracticability. Failure to predict market patterns will not provide a basis for relief under these doctrines, *Northern Indiana Public Service Co. v. Carbon County Coal Co.,* 799 F.2d 265, 276–278 (7th Cir.1986) and see *Sunflower Electric Co-op. v. Tomlinson Oil Company,* 7 Kan. App.2d 131, 638 P.2d 963, 969 (1981). Defendants cannot rely either upon the terms of section 2–615 of the Uniform Commercial Code. The commentary to this, again adopted by each of the states in question clearly asserts at note 4 "Increased cost alone does not excuse performance" and further makes clear that a rise or collapse in the market "is exactly the type of business risk which business contracts made at fixed prices are intended to cover". Insofar as based upon other grounds, however, I see no reason why this claim should not stand.

As regards the claim of *force majeure,* however, defendants have failed to

**5.** Plaintiffs have included this ambiguously worded counterclaim here and in their public policy argument. In my view it is more appropriate to consider the claims made in the first counterclaim as relating to the doctrine of frustration rather than as public policy defenses.

comply with the notice requirements posited by Article XII of plaintiffs' first exhibit contract [6]. This is fatal to this claim, *International Minerals & Chemical Corporation v. Lano*, 770 F.2d 879, 885 (10th Cir.1985).

## VII PRIMARY JURISDICTION OF THE FERC

 Finally, defendants assert in their third affirmative defense that this action should be stayed and those issues which raise questions under the Natural Gas Policy Act be referred to the Federal Energy Regulatory Commission. While there would seem to be some authority for the proposition that the FERC has jurisdiction over matters of this nature *Gulf Oil Corp. v. Tenneco, Inc.*, 608 F.Supp. 1493 (D.C.La. 1985), *Post v. Perry Gas Transmission, Inc.*, 616 F.Supp. 1 (N.D.Tex.1983) it is within the exclusive discretion of this court to determine whether such a reference should actually be made *Danden Petroleum v. Northern Natural Gas Co.*, 615 F.Supp. 1093, 1102 (D.C.Tex.1985). If anything the trend recently has been to avoid the delay and inconvenience which such a reference necessarily involves, *Sid Richardson*, 595 F.Supp. at 499, particularly where the issues at stake involve not only questions of national gas policy, but also complex questions of contract law and interpretation, *Forest Oil Corp. v. Tenneco, Inc.*, 622 F.Supp. 152, 155 (D.C.Miss.1985). Given first the delay and expense this would impose upon plaintiffs and second that whatever the Commission decides, the ultimate contractual issues will remain for judicial resolution, *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412 (5th Cir.1976) *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977), I decline to accede to defendants' request that the matter be stayed pending consideration of the issues raised here by the FERC.

Accordingly it is ORDERED

1. Defendants' 3rd, 7th, 8th, 9th, 10th, 11th and 12th affirmative defenses are DISMISSED.

2. Defendants' 2nd, 3rd, 4th, 5th, 6th and 10th counterclaims are STRICKEN.

3. Defendants shall amend their 4th and 6th affirmative defenses to comport with the terms of this memorandum opinion and order.

4. Defendants shall amend their 1st, 7th and 9th counterclaims to comport with the terms of this order.

---

**6.** Twenty-nine of the contracts in question contain this *force majeure* clause. The remaining three (plaintiffs' exhibits 27, 28, and 29) contain marginally different terms. All, however, impose this requirement.