521 So.2d 1234 (1988)
HANOVER PETROLEUM CORPORATION, Plaintiff-Appellee,
v.
TENNECO INC., Defendant-Appellant.
No. 87-5.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
Rehearing Denied April 11, 1988.
Writ Denied June 2, 1988.
*1235 B.J. Duplantis, Benjamin B. Blanchet, Lafayette, Gordon, Arata, McCollam, Stuart & Duplantis, John M. McCollam, Philip N. Asprodites, Thomas Usdin, New Orleans, for plaintiff-appellee.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Edward C. Abell, Jr., Douglas Longman, Lafayette, for defendant-appellant.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
In this suit, Hanover Petroleum Corporation (hereafter Hanover) seeks relief from Tenneco Inc.'s alleged breach of a Gas Purchase Contract (hereafter the "Kaplan Contract") relating to Hanover's interest in the production from three gas wells located in the Kaplan Field, Vermilion Parish, Louisiana. The trial court granted summary judgment in favor of Hanover finding that the Kaplan Contract is a valid and enforceable contract; the defenses raised by Tenneco in opposition to the motion for summary judgment are issues of law which have no merit; Tenneco breached its "take or pay" obligations under the contract; and, a separate evidentiary hearing should be held to determine the quantum of Hanover's damages and the availability of the remedy of specific performance. Tenneco suspensively appealed seeking a reversal of the trial court's judgment. On appeal, Tenneco *1236 also questions the trial court's rulings on certain discovery motions and other incidental matters.

FACTS
The Kaplan Contract is dated June 8, 1981. The terms of the contract, as amended, obligate Hanover to sell and Tenneco to buy a quantity of "deep gas" produced from three wells in the Kaplan Field equal to 85% of the delivery capacity of the wells.[1] Under the terms of the contract, Tenneco agreed to annually take, or pay for if not taken, the aforementioned quantity of gas. Where gas is paid for but not taken, Tenneco is given the right, under the contract, to make up such volumes, during the term of the contract, by taking volumes of gas, at a later date, above the minimum contract volume without charge. The obligation assumed by Tenneco under the Kaplan Contract is commonly referred to in the industry as a "take or pay" obligation.
The record establishes that, for a considerable period of time prior to the institution of this suit, and continuing thereafter, Tenneco has not taken nor has it paid for the volume of gas which it is required to take or pay for annually under the terms of the Kaplan Contract. In fact, in the spring of 1983, Tenneco notified its producer-suppliers, including Hanover, in a document styled "Emergency Gas Purchase Policy" (EGPP), of its inability to, in substantial part, comply with its "take or pay" obligations under existing gas contracts because of events occurring subsequent to the contracts allegedly constituting force majeure. Hanover repudiated the EGPP announced by Tenneco as a unilateral breach of the Kaplan Contract and this suit followed.
On appeal Tenneco contends, as a basic proposition, that the trial court erred in granting summary judgment despite the presence of genuine issues of material fact with regard to the applicability of the affirmative defenses of Force Majeure, Commercial Impracticability, Imprevision, Mistake and Error, Failure of Cause or Consideration etc., all of which were urged by it at the trial level and all or any one of which, it suggests, would excuse its failure to perform under the Kaplan Contract. Stated another way, Tenneco urges that the trial court erred in striking the affirmative defenses urged by Tenneco without regard to the presence of genuine issues of material fact regarding their applicability. Tenneco corollarily contends that the trial court erred when it struck affidavits filed by it opposing the motion for summary judgment, two in their entirety and four in part. Finally, Tenneco urges that the trial court should have granted its motion to compel answer to certain interrogatories and documents requests and erred when it failed to grant Tenneco's application for a protective order.
At the outset, we address a threshold issue before consideration of this appeal on its merits.

CHOICE OF LAW
Tenneco suggests in brief that Texas law may apply in the instant case and, in that connection, urges that Tenneco's noncompliance with the Kaplan Contract is excused because of the affirmative defenses of Commercial Impracticability (Texas Business and Commercial Code Sec. 2.615) and Imprevision. Hanover argues to the contrary. The trial judge did not specifically decide this issue but presumably, in deciding the instant matter, applied the laws of Louisiana.
The record reflects that negotiations preceding execution of the contract took place both in Texas and Louisiana. Although the contract was signed in Texas and the parties are not residents of Louisiana, performance of the contract, i.e., production of the wells, and delivery to Tenneco's pipeline takes place in Louisiana. Also significant is the fact that the immovable property which is the subject of the contract is located in Louisiana.
*1237 La.C.C. art. 10 (1870), in effect at the time, provided in pertinent part, as follows:
"Art. 10. Choice of law
The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect."
It cannot be gainsaid that the Kaplan Contract, although executed in Texas, has its effect in Louisiana. Under the circumstances present, the cited article statutorily mandates the application of Louisiana law and it is unnecessary that we conduct a modern interest analysis. Shaw v. Ferguson, 437 So.2d 319 (La.App. 2d Cir.1983); Schueler v. Schueler, 460 So.2d 1120 (La. App. 2d Cir.1984), writ denied, 464 So.2d 318 (La.1985), but see Ark-La-Tex Timber Co., Inc. v. Georgia Casualty & Surety Co., 516 So.2d 1217 (La.App. 3rd Cir.1987). In passing, we observe that if the interest analysis approach were used, we would reach the same conclusion. See The Superior Oil Company v. Transco Energy Company, 616 F.Supp. 98 (W.D.La.1985).

FORCE MAJEURE
The Kaplan Contract contains a force majeure provision which reads in pertinent part as follows:
"In the event of either party being rendered unable, wholly or in part, by force majeure to carry out its obligations under this Contract, other than to make payments due for gas delivered prior to such force majeure, it is agreed that on such party giving notice and reasonably full particulars of such force majeure in writing or by telegraph to the other party within a reasonable time after the occurrence of the cause relied on, then the obligations of the party giving such notice, so far as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, and such cause shall so far as possible be remedied with all reasonable dispatch. The term `force majeure,' as employed herein, means act of God, strikes, lockouts or other industrial disturbances, acts of public enemy, wars, blockades, insurrections, riots, epidemics, landslides, lightning, earthquakes, fires, storms, floods, high water, washouts, arrests and restraints by government or persons, civil disturbances, explosions, breakage or accident to machinery, wells, or lines of pipe, the necessity for making repairs or alterations to machinery, wells or lines of pipe, freezing of wells or lines of pipe, partial or entire failure of any wells, and any other causes, whether of the kind herein enumerated or otherwise, not reasonably within the control of the party claiming suspension."
Tenneco principally contends that the following events, subsequent to the confection of the Kaplan Contract, constitute force majeure within the meaning of the quoted clause and excuses their failure to fully perform the contract: the economic recession; the pricing scheme of the Natural Gas Policy Act of 1978; the abundance of and the drop in the price of competitive fuels; the mild 1982-1983 winter; the increase in deliverability of fields committed to Tenneco under gas purchase contracts; and, the delivery by producers of greater quantities of higher cost gas rather than lower cost gas under contracts which involve the sale of gas in more than one price category. Additionally, Tenneco contends that, at the very least, the meaning of the force majeure clause, particularly the catch-all provision "any other causes, whether of the kind herein enumerated or otherwise" and the intent of the parties in adopting same constitute genuine issues of fact which preclude the rendition of summary judgment. The trial court determined otherwise, presumably finding no ambiguity in the force majeure clause and Tenneco's affirmative defense based thereon a meritless issue of law.
Our research discloses that these issues are res nova at the state appellate level. See Universal Resources Corporation v. Panhandle Eastern Pipe Line Company, 813 F.2d 77 (5th Cir.1987). However, these *1238 precise issues have been considered at the trial level by both the State and Federal Judiciary. Judge Parker in Koch v. Columbia Gas Transmission Corporation, No. 83990-A (M.D.La.1985); Judge Duhe in Exxon Corporation v. Columbia Gas Transmission Corporation, 624 F.Supp. 610 (W.D.La.1985); and, Judge Brunson in The Stone Petroleum Corporation et al v. Tenneco, Inc., No. 84-5072, Div. "F", 15th Judicial District Court, Parish of Lafayette, Louisiana (Jan. 1987), respectively, refused to grant summary judgment on the contractual force majeure issue concluding that (1) the scope of force majeure in the contracts is considerably broader than the statutory concept of force majeure; and, (2) genuine issues of fact as to whether the events cited actually prevented performance and are encompassed by the force majeure clause existed which precluded summary judgment. On the other hand, Judge Dirosa in Amoco Production Company v. Columbia Gas Transmission Corporation, No. 83-11570, Div. "L", Civil District Court for the Parish of Orleans, Louisiana (June 1985), and Judge Gonzales in Preston Oil Company v. Transcontinental Gas Pipeline Corporation, No. 294491, Div. "L", 19th Judicial District Court, Parish of East Baton Rouge, Louisiana (Dec. 1986), decided otherwise, as did the learned trial judge in the instant case. We find the analysis in Preston by Judge Gonzales of the force majeure issue compelling and persuasive and take the liberty of quoting same:
"In light of this broad language and in response to their apparent breach of the contract, the defendant adopts several of the same `force majeure' type factual defenses used by other defendants to this kind of litigation involving `take-or-pay' contracts. The three most significant are: 1) increased capacity of Preston to deliver gas; 2) reduced market demand for defendant's product; 3) fundamentally changed governmental regulations transforming the industry from a regulated to an unregulated one.
However, shifting supply and demand and changing governmental regulations are normal factors considered in any business transaction. By the clear and unambiguous terms of the remainder of the contract, the plaintiff accepts the supply risk, the defendant accepts the market risk, and both parties adopt the risk of changed governmental regulations. These three factual defenses certainly do not constitute the same type of catastrophic events enumerated in the first part of the `force majeure' article. Although these are forces or events beyond the defendant's control, no court has ever brought them within the ambit of the `force majeure' defense.
The defendant would have the court interpret the clause `whether of the kind herein enumerated or otherwise' which modifies the phrase `or any other cause,' to mean any other cause whatsoever beyond the control of the defendant in addition to the specifically named ones. If this interpretation were correct, the contract would state that either party could escape responsibility if events beyond the party's control made performance either difficult or unprofitable. An obscure, modifying phrase, buried in an exhibit, would be the most important writing in the entire contract. However, a party would never sign a contract, if this interpretation were correct, because the remainder of the contract would become meaningless. Instead, the court unequivocally interprets the `or otherwise' phrase to not include the specific promises and provisions in other parts of the contract. In other words, the remainder of the contract clearly and unambiguously states that the plaintiff assumes the supply risk while the defendant assumes the market risk, and these are not the events contemplated by the `force majeure' escape valve. The basis commitments of the other parts of the contract remain in force despite the `or otherwise' phrase. The contract must be interpreted consistently; otherwise, defendant's interpretation would render the bulk of the contract meaningless.
Moreover, defendant's strained interpretation of the obscure `force majeure' clause cannot mean that changed governmental policy or regulation will suspend *1239 obligations under the contract. There are absolutely no criteria in the `force majeure' provisions by which to judge when or how such changes would affect the contractual obligations. What degree of shifting governmental policy is required? Must the change be unfavorable? The `force majeure' provisions do not address these issues because they were never intended to do so. Modifications in governmental policy and regulation are economic facts of life and are not a basis for suspending a contract. Superior Oil Co. v. Transco Energy Co. [616 F.Supp. 98] C.A. No. 84-2138, mem. (W.D.La., Feb. 13, 1985); Universal Resources Corp. v. Panhandle Eastern Pipeline Co., mem. (N.D.Tex., April 1, 1986).
Finally, because a contract is law between the parties, this court believes that interpretation of a contract is solely a matter of law, and thus, no material issue of fact must be decided in reaching the conclusions outlined above."
In a similar vein, the learned trial judge in the instant case stated:
"Tenneco claims that due to prevailing economic conditions resulting in a dramatic drop in natural gas prices it was necessary to repudiate its contracts with natural gas producers-suppliers. Tenneco, accordingly, instituted its Emergency Gas Purchase Policy (EGPP), thereby unilaterally modifying the quantity and pricing provisions of its purchase contracts effective May 1, 1983, and the take or pay provisions effective January 1, 1983. Hanover filed this suit for specific performance seeking to invalidate the EGPP and to enforce the original quantity, pricing and take or pay provisions of the contract.
Historically Louisiana jurisprudence has recognized these type of requirements contracts which have been viewed as a veritable constitution between the parties to govern future sales. See 6 S. Litvinoff, Louisiana Civil Law Treatise § 119 n. 32, § 284 n. 47 (1969); Hopkins, 49 Tulane Law Review 605 (1975). In fact, take-or-pay provisions are commonplace in the natural gas industry and are not unconscionable or unfair. Sid Richardson Carbon & Gasoline Co. vs. Internorth, Inc., 595 F.Supp. 497 (N.D.Tex. 1984). The seller's obligation is twofold: (1) insuring that the buyer receives all the goods he requires and (2) supplying the goods at the fixed contract price regardless of market fluctuations. The buyer thereby is assured of his supply and is insulated from increases in the market price. In return, he assures the seller a ready market for his goods at a fixed price.
`Under such a provision, the buyer must assume the market risk; that is, that it may not find a market for all the gas it is obligated to purchase under the contract. If the gas does, in fact, expire during the pendency of the contract, the buyer would then have an action against the seller for its failure to perform under the contract. The buyer thus takes the market risk, while the seller takes the supply risk ... The market risk implicit in take-or-pay provisions is the burden of the [buyer], which must be accepted along with the benefits of the contract. Changing market conditions cannot rewrite an unambiguous and evenly negotiated contract.' Universal Resources Corporation vs. Panhandle Eastern Pipeline Company, No. CA 3-85-0723-R (April 1, 1986); see also Sid Richardson Carbon & Gasoline vs. Internorth, supra."
Our careful consideration of this issue prompts us to conclude that the events relied on by Tenneco as excusing its failure to fully perform the Kaplan Contract do not constitute force majeure within the meaning of the force majeure clause of the contract and no issue of fact material to this determination exists.
It is a cardinal rule that in construing a contract, it must be considered as a whole, and all clauses of the agreement are to be interpreted in reference and relation to each other giving to each that meaning which results from the entire act. Farrell v. Hodges Stock Yards, Inc., 343 So.2d 1364 (La.1977). As noted by Judge Gonzales in Preston, the construction of the *1240 force majeure clause advocated by Tenneco cannot be squared with the other provisions of the contract and, in particular, the mutual obligations assumed by the parties under the take or pay provisions thereof. Although the circumstances relied upon by Tenneco are forces or events beyond its control, adverse economic conditions and modifications in governmental regulations and policy which tend to render performance burdensome and unprofitable do not constitute force majeure. As stated in Northern Indiana Public Service Company v. Carbon County Coal Company, 799 F.2d 265 (7th Cir.1986):
"The whole purpose of a fixed-price contract is to allocate risk in this way. A force majeure clause interpreted to excuse the buyer from the risk he expressly assumed would nullify a central term of the contract."
For these reasons, we conclude that Tenneco's reliance on force majeure is without merit as a matter of law.
WHETHER TENNECO'S PERFORMANCE IS EXCUSED BECAUSE OF THE AFFIRMATIVE DEFENSES OF COMMERCIAL IMPRACTICABILITY AND IMPREVISION
Tenneco first urges that, under Texas law, commercial impracticability excuses its failure to perform under the contract. We previously concluded that Louisiana law rather than Texas law governs this proceeding. The common law doctrine of commercial impracticability has no application under Louisiana law. See The Superior Oil Company v. Transco Energy Company, et al, supra.
We reject Tenneco's defense of imprevision for the same reason. This essentially French doctrine which permits judicial reformation of contracts whenever a drastic change in circumstances renders performance for one of the parties harsh has not been recognized or accepted by the courts of this state. Although reference to this doctrine appears in Armour v. Shongaloo Lodge No. 352, Etc., 342 So.2d 600 (La.1977), the doctrine is not discussed and the result reached in that case would indicate that if considered our Supreme Court rejected same.

THE DEFENSE OF ERROR
Tenneco urges that the unforeseen collapse of the natural gas market and governmental restructuring of the industry has rendered its performance under the contract untenable. From this premise, it argues that the doctrine of mutual or unilateral error requires the voidance of the contract. In effect, what Tenneco argues is that, had it anticipated the mentioned events, it would never have agreed to the terms of the Kaplan Contract, therefore its consent was the result of error.
The language of the Kaplan Contract is plain and unambiguous. Tenneco's claim of error is founded on nothing more than an error in judgment founded upon its own evaluation of future market conditions.
Our Civil Code declares that consent may be vitiated by error only when it concerns the principal cause or motive and that cause or motive was known or should have been known to the other party. La.C.C. arts. 1948 and 1949. In Caddo Parish School Board v. Cotton Baking Company, 342 So.2d 1196 (La.App. 3d Cir.1977), our brethren rejected a claim of error based upon a change in market conditions stating:
"The alleged error is not an error in mathematical calculation, but an error in judgment which does not entitle [the seller] to rescind the agreement. In addition, Article 1825 requires both parties to be aware of an error before a contract can be voided. There is no evidence that the [plaintiff] had any knowledge of the effect the Russian wheat sales would have on the price of bread products. The fact that [the seller's] bid on the item was much less than the other bid is not in itself sufficient to impute knowledge of an error to the [plaintiff]. 342 So2d at 1198."
It is not within the province of the courts to relieve parties of their bad bargains. Kenny v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970). The principal cause *1241 of the Kaplan Contract was the sale and concommittant purchase of a certain volume of gas at a fixed price. There is no error alleged in regard thereto. The expectations of the parties as to the profitability of the contract are irrelevant to a determination of error. As stated by Judge Duhe in Superior Oil Company, supra:
"Undoubtedly, Pipeline [Transcontinental Gas Pipeline Company] was in error as to its motive for entering into this obligation. The market has simply not evolved in the manner anticipated. But this error is far from an error in the obligation itself. And Pipeline has failed to establish an issue of fact as to whether there was error as to the principal cause of the contract, i.e., a certain price for a certain quantity of gas. The Superior Oil Co., supra, p. 109."
For these reasons we reject Tenneco's claim of error.

FAILURE OF CAUSE OR CONSIDERATION
Tenneco argues that the consideration for its obligation to pay for gas not taken was the ability to make up the gas at a later time and, since make up is no longer possible because of changes in market conditions, there is no cause or consideration for Tenneco's take or pay obligation. In this connection, Tenneco argues alternatively that its inability to make up the gas at a later time renders the take or pay obligation an unlawful stipulated damage clause rather than an alternative obligation. We find merit in neither of these contentions.
The Kaplan Contract specifically mandates that for each contract year Tenneco will either take and pay for, or pay for if not taken, a specified quantity of gas. The contract establishes a limited makeup period after which Tenneco loses its right to make-up. Take-or-pay obligations are common-place in the natural gas industry and are not unconscionable or unfair. Sid Richardson Carbon & Gasoline Co. v. InterNorth, Inc., 595 F.Supp. 497 (N.D.Tex. 1984). Tenneco and Hanover bargained for a certain allocation of risks. Tenneco cannot now be heard to complain of lack of cause based on its projections of future market conditions which apparently turned out to be incorrect.
The take or pay obligation assumed by Tenneco is not an unlawful stipulated damage clause but an alternative obligation. We so held in Pogo Producing Co. v. Sea Robin Pipeline Co., 493 So.2d 909 (La.App. 3rd Cir.1986), writ denied, 497 So. 2d 310 (La.1986).
THE TRIAL COURT'S RULING ON THE DISCOVERY ISSUES AND TENNECO'S REQUEST FOR A PROTECTIVE ORDER
Considering our ultimate conclusion in this matter, Tenneco's complaints with regard to the trial court's rulings on discovery matters are now moot or irrelevant. In any event, we have considered these contentions and find no clear error in the trial court's rulings. Further, we discern no clear error in the trial court's order denying Tenneco's request for issuance of a protective order.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's cost and this matter is remanded to the trial court for further proceedings.
AFFIRMED AND REMANDED.
NOTES
[1] The contract covers only gas produced from a subsurface interval below 15,000 feet, i.e., gas classified as "deep gas" which was deregulated under Section 107 of the Natural Gas Policy Act of 1978 (NGPA).