**ELLIS MANUFACTURING CO., Inc.,**
**Appellant,**

v.

**Edmund BRANT, Appellee.**

**No. 579.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 19, 1972.

George M. Bishop, Tipton & Bishop, Houston, for appellant.

Joel W. Cook, Schlanger, Cook & Cohn, Houston, for appellee.

TUNKS, Chief Justice.

This case involves a breach of contract dispute. Edmund Brant, appellee and President of Brant Development Company, was to build a large apartment complex called Ravenwood located in the Spring Branch area of Houston at 1919 Wirt Road. Upon entering into the construction of phase 1 of this venture, Brant contracted with Ellis Manufacturing Company, appellant and hereinafter referred to as Ellis, to supply and install kitchen cabinets, bathroom vanities, medicine cabinets, etc. The price per unit to be $219.82.

A dispute arose in December of 1967 as to payment due for material that had been delivered. Ellis threatened to withhold delivery of the last shipment until payment in full. Brant countered arguing that the amount was not due and that if other delivery was not made by January 5, 1968, the contract would be considered breached. No other delivery being made on or before that latter date, Brant ordered the material from another subcontractor at a higher price and filed suit for breach of contract against Ellis. Shortly thereafter, Ellis filed suit against Brant for breach. These causes were consolidated. Upon answers to special issues submitted to the jury, the trial court rendered judgment in favor of Brant in the amount of $6,000.00 plus interest and further ordered that Ellis take nothing by its claim.

Ellis has appealed and, by brief and amended brief, urges five points of error.

These basically are to the effect that Ellis, in need of assurance under Tex.Bus. & Com.Code Ann. sec. 2.609(a) (1968), V.T. C.A., was entitled to withhold delivery until secure; that it was Brant who breached the contract by his failure to pay or in his not accepting delivery on January 13, 1968; and that Brant, upon his rescission of the contract, is not entitled to damages. The contract in question, signed April 25, 1967, by Brant and Ellis, provided, "All of the above items to be delivered and installed at the seller's cost, complete and in timing with other job trades . . . ". Payments were to be made to seller, Ellis, on or before the 10th of each month ". . . in an amount equal to 90% of completed apartments during the preceding month and ending on the 25th day of said month". Allowance was also made for the normal 10% retainage.

Prior to December, both parties were substantially performing their obligations under the contract. To avoid any further losses through vandalism and to warrant insurance coverage by Brant after delivery, Ellis submitted to Brant invoices describing the property which had been delivered and was to be subsequently installed and billed. Such an invoice was designated a "material billing" only and was not a demand for payment.

Invoice number 1111, dated November 13, 1967, was such an invoice and stated "Note: Material billing only." It purported to cover the materials for eight units of building 6, 8 units of building 11, and 4 units of building 9.

The evidence shows that installation of all but a small portion of these materials was subsequent to November 25, 1967, the cutoff date for December payments as per the contract, and all invoices for installation of these materials were dated after November 25, 1967. Nevertheless, Ellis wrote on December 14 threatening to discontinue deliveries until payment of invoice no. 1111. The amount demanded was $3,700.26 which is 90% of the total amount of that invoice,

leaving a 10% retainage. Brant replied by letter of December 18, stating that such amount would not be due until January 10. On December 22nd, Ellis, by letter, sought to relieve himself of any further installation obligation, as a condition to delivery of the remaining materials. By telegrams dated December 27 and 28, in response to telephone inquiries, Brant was informed that the vans were loaded with his materials, but due to the Christmas holidays, December 22 to January 2, all scheduling for deliveries were postponed until January 2. Brant's attorney wrote on January 2nd advising that invoice no. 1155, dated December 15, 1967, was invalid and further that unless delivery was made prior to the close of business on January 5, 1968, Brant would consider the contract breached and obtain the materials elsewhere.

Delivery of the rest of the material called for under the contract was tendered by Ellis on January 13, 1968, after a partial payment by Brant on January 10, the contract date for payment for all material delivered and installed between November 25 and December 25, 1967. Brant, who had already contracted with another to complete the work, refused to accept delivery. The materials were stored by Ellis at a warehouse in Houston in Brant's name.

In addition to the evidence presented above, there was testimony to the effect that the failure to deliver caused a delay of 30 days in the completion of the project. The average rental at 80% occupancy for the 50 units for that period of time was $6,700.00. There was also evidence of several thousand dollars difference suffered by Brant upon contracting the remaining work to another company because of Ellis' failure to deliver by January 5th.

Jim Wallace, Ellis' sales manager, stated on deposition that their general or standard practice was to attempt collection of all monies due, excepting retainage, before the last delivery; that there was nothing specific about Brant which caused them any insecurity, just that this attempt constituted their general practice.

The jury, in response to the issues, answered that Ellis refused further delivery until payment of $3700.26 on invoice number 1111; that Ellis, after December 14, failed to proceed with delivery and installation in timing with other job trades; that Ellis failed within a reasonable time after December 14 to provide Brant with adequate assurance of its performance; and that $6,000.00 would compensate Brant for the loss resulting from these failures. It further found that Ellis did not, by his letter of December 14, repudiate the contract, and that delivery by Ellis on January 13 was not a delivery within a reasonable time within the terms and conditions of the contract. While the jury found that some of the cabinets listed on invoice no. 1111 had been installed on or before November 25, it also found that Brant's failure to pay for those did not constitute a breach of the whole contract. It found that Brant's demand for delivery on January 2 allowed a reasonable time for such delivery.

Tex.Bus. & Com.Code Ann. sec. 2.609(a) (1968) provides:

"A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return."

It is undisputed that in December 1967, Ellis failed timely to make the delivery that the contract provided for. Ellis contends that such failure to deliver was authorized and justified by sec. 2.609(a). In order for such statute to have authorized Ellis to withhold delivery it was necessary, first, that Ellis have "reasonable grounds for insecurity". The pleading and proof of such fact, as an excuse for its non-performance, was Ellis' burden. Ellis contends

that the evidence shows such fact as a matter of law.

The principal basis for any contention that Ellis had reasonable grounds for insecurity as an excuse for non-performance was Brant's refusal to pay on December 10, 1967, the November 1967 installation invoice. The jury found that only part of the cabinets covered by that invoice were installed on or before November 25th. Some of such cabinets had not been installed. Thus, by the terms of the contract, payment for some of the material covered by that invoice was not due, so that Brant was justified in not paying it. It cannot be said that Brant's failure to pay was, under the circumstances, as a matter of law, reasonable grounds for insecurity. Furthermore, the testimony of Ellis' sales manager suggests that Ellis' refusal to deliver was not because of insecurity, but in keeping with its usual practice. No issue was submitted inquiring of the fact or facts under which Ellis would have been excused under sec. 2.609(a) from performing. None was requested. The defense was waived by Ellis. Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529 (Tex.Sup.1965); Texas Rules of Civil Procedure 279.

Ellis next contends that it was Brant who breached the contract, at least before any breach by Ellis. Again, this would be a matter upon which Ellis has the burden of proving—it is clearly not shown as a matter of law. The jury, in response to special issues numbers 9, 10 and 11, determined that some of the cabinets had been installed in buildings 6 and 11 prior to November 25, 1967, that Brant's failure to pay on or before December 10 for those cabinets did not constitute a breach of the whole contract and that Brant's attorney's January 2nd demand for delivery allotted reasonable time for such delivery under the contract.

No request was made for an issue asking how many units were installed before November 25. The invoice for such work is dated November 30, 1967, which fact could give Brant grounds for determining no payment would be due until January 10 (which is the date he did, in fact, pay). The demand for payment dated December 14 included all materials invoiced on number 1111 without any regard to whether they had been installed on or before November 25. The jury failed to find any facts showing that Brant's refusal to pay the November billing on or before December 10 was an unjustified breach of contract by Brant. The evidence does not show such facts as a matter of law. The trial court did not err in denying Ellis any recovery from Brant.

The judgment of the trial court is affirmed.