**LONE STAR GAS COMPANY,**
Appellant,

v.

**Glenn H. McCARTHY et al., Appellee.**

**No. 17678.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

July 17, 1980.

Rehearing Denied Sept. 4, 1980.

---

**654**

Taylor & Norwood, E. R. Norwood, Liberty, for appellant.

Fulbright & Jaworski, M. W. Parse, Jr., Houston, for appellees.

Before WARREN, PEDEN and EVANS, JJ.

WARREN, Justice.

This is an appeal from a judgment, rendered after a non–jury trial, awarding appellees damages for a breach of contract by appellant and denying appellant recovery on its counterclaim.

The material facts are undisputed. The only question is whether under the gas sales contract appellant was entitled to be reimbursed for gas payments made under a pre–connection "take or pay" provision when it was unable to make up the gas in kind because of the depletion of the gas reservoir.

In the summer of 1972, appellees discovered a gas field in Montgomery and Grimes Counties. An "open flow test" indicated that the discovery was significant and that the reservoir would furnish gas for a long time.

On October 24, 1972, the parties entered into a gas sales contract which contained two "take or pay" provisions pertaining to the periods both before and after the well was connected to the pipeline. Both the "pre–connection" and the "post connection" clauses required that appellant (Buyer) purchase at least 80% of the gas available or pay for that amount. The pre–connection liability to take or pay was to begin 45 days after October 24, 1972. However, the Buyer had the right to "make up" or take, within the following two year period, gas it had paid for, but which it had not taken.

The well was connected to the pipeline on June 4, 1973, approximately six months after the obligation to take or pay began.

Appellant began paying for the available gas in December of 1972 and paid each month under the term of the contract until May 1, 1973. It did not pay for the month of May and the first three days in June of 1973. Appellees, as they were required to do under the contract, operated the wells at 100% capacity and appellant took the amount it was obligated to take and also began to take make up gas for the pre–connection payments. In February of 1975, the reservoir was depleted before appellant had made up in kind a quantity equal to its pre–connection payments.

Appellees sued for the sum of $139,905.56, claiming they were entitled to this amount under the pre–connection take or pay clause for the month of May and for the first 3 days of June, 1973. Appellant does not contest the fact that this amount was owed under the term of the contract, but contends that it was "washed out" because appellees owed appellant for gas payments which appellant was unable to recoup in kind.

The portions of the contract pertinent to our decision follow:

### The "Take or Pay" Provision

". . . Buyer agrees to take gas or pay for it if available and not taken, as outlined in Article IX, commencing forty–five (45) days after the date of the acknowledgment of the official signatory for Buyer on this contract."

### Article IX

### The "Pre Connection" Paragraph

"If, during the period commencing forty–five (45) days after acknowledgment of the official signatory for Buyer and ending upon the date of the initial pipeline connection as provided in this contract, Buyer shall fail to purchase, if available under the terms of this contract, a quantity of gas equal to eighty percent (80%) of Seller's delivery capacity at the point of delivery and as deter-mined by the initial test of Seller's delivery capacity here–under, then Buyer shall pay Seller for such quantity whether taken or not. Any such payment by Buyer shall be made on or before the 25th day of each calendar month next succeeding Buyer's fiscal month in which such deficiency occurred; provided, however, *Buyer shall be entitled to makeup any such deficiency as provided in this Article IX.*"

### The "Post Connection" Paragraph

"In the event Buyer should fail to purchase under this contract during any annual period, or partial annual period, of the term hereof a quantity of gas required to be purchased hereunder subject to and pursuant to the provisions of this contract, then Seller may within four (4) months following the end of such annual period notify Buyer regarding Buyer's failure to purchase the Contract Volume of gas under this contract, accompanying such notice with an itemized statement giving full information with respect to such deficiency and the amount due therefor at the price prevailing under this contract during such annual period, or partial annual period, and Buyer shall within sixty (60) days after receipt of such notice pay Seller the amount due by reason of such deficiency; provided, however, that Buyer shall have the right during the two (2) annual periods following the annual or partial annual period in which such deficiency occurred to receive from Seller without charge therefor all or part of the amount of gas which such deficiency payment would purchase at the price or prices per one thousand (1,000) cubic feet in effect under this contract during the annual period, or partial annual period in which such makeup is received; provided further, that no makeup gas may be taken during any annual period for the purpose of satisfying any prior deficiency until the Contract Volume for such annual period has been received by Buyer; and provided still further that this provision shall not operate to extend the terms of this con-

tract or to give Buyer the right to take makeup gas after this contract has terminated. If any amount of *such payment or payments* cannot be made up because of Seller's *lack of ability to deliver gas*, then Seller shall repay such amount to Buyer."

Although the contract has different provisions regarding the payment for gas not taken during the post connection and pre–connection periods, it only refers to the post connection paragraph regarding the Buyer's right to make up pre–connection deficiencies. No specific reference is made to Buyer's right to be reimbursed for pre–connection payments.

In five points of error, appellant alleges that the trial court erred in finding that: (1) the term "such payment or payments" in the repayment clause refers only to post connection take or pay, deficiencies; (2) the phrase "Buyer shall be entitled to make up such deficiencies as provided in Article IX" incorporates only the in kind makeup gas provisions of Article IX; (3) the term "lack of ability to deliver gas" means lack of ability to deliver gas which appellant had a make up right; (4) appellant is liable for $139,905.56 for pre connection deficiencies plus prejudgment and postjudgment interest; and, (5) appellees had no obligation to repay appellant for the pre connection deficiencies which appellant was unable to make up in kind.

As stated above, the pre connection paragraph refers to the phrase "make up as provided in Article IX." The question for our determination is whether make up includes reimbursement.

■ The term "make up gas," as used in the oil and gas industry, means "that which is taken in succeeding years, having been paid for previously under a take or pay clause in a gas purchase contract. The contract will normally specify the number of years after payment in which purchaser can take delivery of make up gas without payment a second time." Williams and Meyers, Manual of Oil and Gas Terms, p. 331 (1974).

■ Appellant contends that the term "make up" should be construed broadly to embrace the broader definition of setting an account in order. We disagree. In the gas sales industry "make up" is a word of art. Both parties had substantial experience in the oil and gas industry. In construing the contract the courts give consideration to the meaning which is attributed to the term in the industry. See *Emmond's Inc. v. Obermiller*, 526 S.W.2d 562 (Tex.Civ. App.1975, writ ref'd n.r.e.); *Fox v. Gallo*, 428 S.W.2d 127 (Tex.Civ.App.1968, writ ref'd n.r.e.). Moreover, the parties in Article IX used the term "make up" as it is commonly construed in the industry by setting out appellant's right to take gas to make up for deficiency payments. Appellant's right to reimbursement only arose if it could not make up, by in kind takes, the deficiency payments. Thus two rights are stated, the make up right and the reimbursement right.

Appellant further contends that the reasonableness of appellees' interpretation should be compared with its interpretation to determine the probability that reasonable businessmen, under the same circumstances, would enter into such an agreement. In support of this approach appellant cites *Eastman Oil Well Survey Co. v. Hamil*, 416 S.W.2d 597 (Tex.Civ.App.–Houston 1967, writ ref'd n.r.e.) and other cases where the courts looked at the surrounding circumstances and the objectives of the parties to determine the reasonableness of the construction of the contract. Appellant contends that a construction disallowing it to receive reimbursement is inconsistent with a position that reasonable businessmen would take upon entering into a contract. In a usual buy and sell situation this is probably so, but in our case, at the time the contract was signed, both parties were of the opinion, which was justified by the open flow test, that the reservoir was large and that there would not be a problem in recouping the pre–connection deficiencies. In addition, we note that under the normal take or pay clause, the buyer takes a risk that it might not be able to make up a deficiency within the make–up period.

Thus, if the gas is not made–up, then the buyer effectively purchases the gas a second time.

The clause allowing reimbursement follows the provision concerning the making up of the deficiencies during annual or partial annual periods, which can not be construed to encompass the pre–connection period under the contract. Had the parties intended for the reimbursement clause to apply to pre–connection deficiencies, it would have been simple to state this, or to insert this short clause following the pre–connection, make up paragraph.

The judgment is affirmed.