UNIVERSAL RESOURCES CORPORA-
TION, Plaintiff-Appellee
Cross-Appellant,

v.

PANHANDLE EASTERN PIPE LINE
COMPANY, Defendant-Appellant
Cross-Appellee.

No. 86–1420.

United States Court of Appeals,
Fifth Circuit.

March 31, 1987.

Jacks C. Nickens, Houston, Tex., Michael
Byrd, Akin, Gump, Strauss, Hauer & Field,
Dallas, Tex., for defendant-appellant cross-
appellee.

Dan S. Boyd, Johnson & Swanson, Dal-
las, Tex., for plaintiff-appellee cross-appel-
lant.

Before REAVLEY and RANDALL, Circuit Judges, and WOODWARD,* District Judge.

WOODWARD, District Judge:

## FACTS

This is a diversity case arising out of the breach of a Gas Purchase and Sales Agreement between Universal Resources Corporation (URC) and Panhandle Eastern Pipe Line Company (Panhandle). URC is a non-operating cotenant owner of gas wells in Oklahoma. URC, as seller, and Panhandle, as buyer, entered into a fifteen-year gas purchase and sales agreement (Agreement) in 1982. Under the Agreement, URC is required to tender for delivery a certain quantity of gas (Contract Quantity)[1] to Panhandle at its pipeline connection. The Agreement also contains a standard "take-or-pay" clause obligating Panhandle to take gas, or pay for gas tendered for delivery but not taken. If, at the end of the Contract Year, Panhandle has not taken all the Contract Quantity, it must make deficiency payments for the difference between the Contract Quantity and the quantity actually taken. Panhandle may make up gas paid for but not taken during the succeeding five years of the Agreement.[2]

URC notified Panhandle of its deficiency quantity of 92,775 Mcf of gas and deficiency amount of $708,990.23 at the end of the 1983 Contract Year, and of the deficiency quantity of 119,388 Mcf of gas and defi-

ciency amount of $919,168.21 at the end of the 1984 Contract Year. Panhandle refused to pay the deficiency amounts. URC brought suit in state court for breach of contract and Panhandle removed the case to federal court. The United States District Court for the Northern District of Texas rendered summary judgment in favor of URC and Panhandle brought this appeal. URC appeals only the award of prejudgment interest. We now affirm.

## DISCUSSION

Panhandle's issues on appeal can be grouped into three areas: (1) whether the trial court correctly held that Panhandle was not entitled to suspend performance under Tex.Bus. & Com.Code Ann. § 2.609 (Vernon 1968); (2) whether the trial court correctly held that the Agreement is unambiguous and correctly interpreted the intent of the parties; and (3) whether genuine issues of material fact exist which preclude summary judgment.

### 1. Reasonable insecurity under § 2.609

Panhandle argues that it was justified in refusing to make deficiency payments because URC failed to give adequate assurance that it had sufficient reserves to supply makeup gas in the future. After the execution of the Agreement, Panhandle conducted geological studies on the URC wells in the Fletcher Field which were dedicated to Panhandle and concluded that, based on the field reserves, specific well

---

* District Judge of the Northern District of Texas, sitting by designation.

1. Capitalized terms have the meanings given them in the Agreement. The Contract Quantity is calculated by a formula set out in ¶ 4.1 of the Agreement.

2. The applicable provisions, in pertinent part, read as follows:

4.1 During each Contract Year, Seller agrees to sell and deliver to Buyer and Buyer agrees to buy and receive or failing to buy and receive, nevertheless to pay for from Seller's gas wells connected hereunder, a gas well Contract Quantity which shall be ... equal to 80 percent of each such well's maximum daily sustained capability....

\* \* \*

4.8 If, at the end of any Contract Year, Buyer's receipts of gas well gas, during said Contract Year were less than the Contract Quantity, and said volume was tendered for delivery, then Buyer shall, within sixty (60) days thereafter, pay Seller for the deficiency at a price equal to the average of the prices in effect for such gas during the same Contract Year. Buyer during any of the five (5) ensuing Contract Years, or the balance of the term hereof, if less than five (5) Contract Years remain, may take volumes of gas, called "make-up gas", equal to those paid for but not received; provided such volumes of "make-up gas" shall be in excess of the Contract Quantity for any such year.

For any "make-up gas" received, Buyer shall pay Seller any difference in price between that in effect at the time of such make-up and that paid for such deficiency.

capabilities, and Panhandle's projected sales levels, it would be impossible for URC to supply both the Contract Quantity for the remaining term of the Agreement and makeup gas in sufficient quantities to permit full recoupment of deficiency payments. Affidavit and Supplemental Affidavit of Michael Knobloch, Record Vol. 1 at 108, 199. Panhandle then made written demand on URC for assurance that URC would either provide makeup gas or refund deficiency payments, and URC refused to give such assurance.

Article 2 of the Tex.Bus. & Com.Code Ann. (Vernon 1968), which governs the sale of goods, applies to gas purchase and sales agreements. *E.g., Southern Natural Gas Co. v. Pursue Energy,* 781 F.2d 1079, 1081 n. 3 (5th Cir.1986) (applying Mississippi law). Under Tex.Bus. & Com.Code Ann. § 2.609 a party may suspend performance without being in breach of the contract when certain conditions exist. That section provides

> (a) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

Before a party can suspend performance, however, he must have reasonable grounds for insecurity. The reasonableness of grounds for insecurity is determined by reference to commercial standards. *Id.* § 2.609(b). The trial court held,[3] and we agree, that Panhandle's fears of lack of makeup gas in the future did not rise to the level of reasonable insecurity as a matter of law.

First, there was no event occurring *after* the execution of the Agreement which could have given rise to a reasonable insecurity. *See Pittsburgh-Des Moines Steel*

*Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 581–82 (7th Cir.1976). There was no change in the reservoir capacity or in URC's ability to perform. The only "event" was Panhandle's evaluation of the Fletcher Field. Furthermore, as an experienced buyer of natural gas Panhandle is deemed to have known of the risk that it might not be able to recoup deficiency payments by taking makeup gas. *Lone Star Gas Co. v. McCarthy,* 605 S.W.2d 653, 656 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.).

Second, Panhandle's alleged insecurity arose from purely subjective evaluations and projections and was not based on any objective, identifiable conduct of URC. *See Cole v. Melvin,* 441 F.Supp. 193, 203 (D.S. D.1977). URC properly tendered for delivery the Contract Quantity for the 1983 and 1984 Contract Years and has continuously maintained that it is willing and able to perform under the Agreement. Third, Panhandle's conclusion of insecurity is based upon some unsupported assumptions about the market for natural gas. URC's responsibility to supply makeup gas is only triggered when Panhandle has made deficiency payments in a preceding year, *and* Panhandle has taken the entire Contract Quantity for the year. Agreement ¶ 4.8. Panhandle assumes that in the five years following the years in which deficiency payments are made, the demand for gas will increase to the point that Panhandle will be able to take amounts of gas over and above the Contract Quantity. In fact, the demand for gas and Panhandle's ability to take the Contract Quantity has decreased, while Panhandle's deficiency quantities increased from 1983 to 1985 when this suit was filed. Record, Vol. 1 at 186–87. Panhandle cannot ignore its own obligations under the Agreement, assume that it will be able to take the Contract Quantity and more, and then demand that URC give adequate assurance that it can perform in Panhandle's hypothetical situation.

Because Panhandle did not have a reasonable insecurity regarding URC's future

---

**3.** The trial court found that Panhandle had only a "mere suspicion" of a lack of makeup gas.

Memorandum Opinion and Order, Record Vol. 2 at 267 n. 10.

performance, URC was not required to give adequate assurance and its failure to do so does not excuse Panhandle from its obligation to make deficiency payments. *See Ellis Manufacturing Co. v. Brant,* 480 S.W.2d 301, 303–04 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ).

### 2. *Parties' intent*

■ Panhandle raised several defenses which concern the parties' intent regarding the effect of the take-or-pay clause.[4] On appeal, Panhandle argues that the Agreement was ambiguous and parol evidence should have been admitted to show that the parties never intended to require payment for gas that URC could not supply or legally produce. For instance, Panhandle claims that its evaluations of the geologic formations underlying the Fletcher Field show that it will be physically impossible for URC to produce the Contract Quantity and makeup gas in sufficient quantities to permit full recoupment of the deficiency payments. Also, according to Panhandle's calculations, the rate of production required to meet the Contract Quantity and demand for makeup gas would violate Oklahoma conservation laws restricting production. Panhandle concludes that because the parties could not have intended to require URC to either do the impossible or violate Oklahoma law, they could not have intended to enforce the take-or-pay clause under present circumstances. Whether or not the production of makeup gas in the future would violate the Oklahoma conservation laws is purely speculation and this will not support Panhandle's position.

The trial court held that the take-or-pay provisions were unambiguous and the result of arms-length negotiations. Memorandum Opinion and Order, Record Vol. 2

at 264. It further noted that such provisions are common in the natural gas industry and are not unconscionable nor unfair. *Id.*

Whether a contract is ambiguous is a question of law which is reviewable de novo on appeal. *See, e.g., Houston General Insurance Co. v. Realex Group, N.V.,* 776 F.2d 514, 515 (5th Cir.1985); *Paragon Resources, Inc. v. National Fuel Gas Distribution Corp.,* 695 F.2d 991, 995 (5th Cir.1983); *Richland Plantation Co. v. Justiss-Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982).

The purpose of the take-or-pay clause is to apportion the risks of natural gas production and sales between the buyer and seller. The seller bears the risk of production. To compensate seller for that risk, buyer agrees to take, or pay for if not taken, a minimum quantity of gas. The buyer bears the risk of market demand. The take-or-pay clause insures that if the demand for gas goes down, seller will still receive the price for the Contract Quantity delivered each year.

■ The definition of makeup gas contemplates that the buyer may pay twice for the same gas and that the buyer may never receive gas for which he has already paid. *Lone Star Gas Co. v. McCarthy,* 605 S.W.2d 653, 656–57 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); Williams and Meyers, *Manual of Oil and Gas Terms* 331 (1974). The terms of the take-or-pay clause are unambiguous, common to the gas industry, and fully enforceable. Because the clause is unambiguous, Panhandle's intentions, and the possibility that future production may be physically impossible or may violate Oklahoma conservation laws, are irrelevant. The trial court did not err in refusing to consider

---

**4.** Panhandle asserted the defenses of frustration, mutual mistake, impossibility, illegality, unjust enrichment, and that the promise to make deficiency payments is unenforceable as a penalty or liquidated damages. The trial court addressed each of these contentions and determined that none of them permitted Panhandle to avoid liability under the plain language of the Agreement. The take-or-pay clause is a promise in the Agreement, not a measure of damages

after breach; therefore it is not unenforceable as a penalty under Tex.Bus. & Com.Code Ann. § 2.718(a) (Vernon 1968) or unreasonable unliquidated damages provision. Any claims of frustration, mutual mistake, impossibility, illegality or unjust enrichment were based on Panhandle's unilateral assumption that it would not have to make present deficiency payments if makeup gas could not be supplied in the future.

extrinsic evidence of the parties' intent or in enforcing the clause as written.

### 3. *Existence of questions of fact*

 Panhandle asserts that its affidavits submitted in opposition to the motion for summary judgment raise genuine issues of material fact which preclude summary judgment.

The summary judgment proof submitted by URC shows the terms of the Agreement obligating Panhandle to make deficiency payments, that the Contract Quantity was tendered to Panhandle, how deficiency quantities and deficiency amounts for the 1983 and 1984 contract years were calculated; that demand was made upon Panhandle and Panhandle refused to pay any deficiency amounts. The essential elements of a cause of action for breach of a take-or-pay clause are: (1) proper tender of the gas by the seller, and (2) buyer's refusal to either take or pay for the gas. *Houston Pipe Line Co. v. Oxy Petroleum, Inc.*, 597 S.W.2d 57, 62 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd). Panhandle's affidavits and supplemental affidavits do not controvert any of these facts. Panhandle merely denies liability for deficiency payments, denies that it intended to pay for gas that cannot be made up, and asserts that its studies show that URC does not have sufficient reserves to supply makeup gas. These arguments raise issues of law as to whether liability can be avoided, but are insufficient to raise genuine issues of material fact.

### CROSS APPEAL

 The trial court followed Tex.Rev. Civ.Stat.Ann. art. 5069–1.03 (Vernon Supp. 1986) in awarding 6% prejudgment interest to URC. URC brings this cross appeal, asserting that this court's decision in *Crown Central Petroleum Corp. v. National Union Fire Insurance Co.*, 768 F.2d 632 (5th Cir.1985) requires the trial court to award 10% prejudgment interest. Because no objection was raised in the trial court, this question has not been properly preserved for appeal and is not before this court for decision.

The judgment of the district court is AFFIRMED.