**ROYE REALTY & DEVELOPING, INC., Plaintiff/Appellant,**

**v.**

**ARKLA, INC., Defendant/Appellee.**

**No. 77693.**

Supreme Court of Oklahoma.

July 13, 1993.

Rehearing Denied Nov. 16, 1993.

**1152**

Eric S. Gray, Thomas P. Goresen, Gregory F. Pilcher, Gray, Goresen, Moriarty & Wright, P.C., Oklahoma City, for plaintiff/appellant.

J. Kevin Hayes, Graydon D. Luthey, Jr., Richard T. McGonigle, William G. Bernhardt, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, for defendant/appellee.

SIMMS, Justice:

Certified Question of Law from the United States District Court for the Western District of Oklahoma.

### FACTS

The following relevant facts are from the Order of the federal court certifying this question of law.

Arkansas Louisiana Gas Company, a division of Arkla, Inc. (Arkla) which is the appellee herein, entered into a contract with Gulf Oil Corporation (Gulf) in which Gulf agreed to sell all of the gas it acquired from certain leases and wells to Arkla for a 15 year period. At the time of the contract, Gulf had drilled two wells on properties designated the Epley # 1–14 and the Gulf Bagley–Griffin # 1–14.

Six years after the contract was executed, Roye Realty & Developing, Inc. (Roye Realty), appellant, purchased the contract leases, contract wells, and all of Gulf's rights under the gas purchase contract.

The contract further required Roye Realty to hold its gas from the dedicated acreage exclusively for Arkla. Arkla had alternative obligations under the contract with the first being for Arkla to take and pay for a certain minimum quantity of gas calculated by reference to deliverability tests.[1] Alternatively, Arkla was to pay Roye Realty an annual amount of money (often referred to by courts as "deficiency payments") calculated based upon the deliverability tests, whether the gas was taken or not.

The relevant deliverability tests were performed and the test on the Bagley–Griffin well in effect at the time of the alleged repudiation of the contract was performed one month prior to the date of the alleged repudiation. The deliverability test performed on the Epley well in effect at the date of the alleged repudiation was done approximately four months prior to the date of the alleged repudiation.

Roye Realty claims that Arkla has failed and refused to take the quantity of gas it was required to take or pay for under the contract. According to Roye Realty, the damages for such repudiation should be based upon the "pay" alternative under the contract and be calculated according to Arkla's minimum obligation from the date of the alleged repudiation through the end of the contract term.

Conversely, Arkla contends that had Arkla honored its obligation to take and pay for gas for the remainder of the contract, the amount produced, taken and paid for would have been less than the amount required to be paid under the "pay" alternative of the contract and that the measure of damages should be based upon the less-

---

1. A deliverability test is conducted to determine the "daily deliverability" of a well. The contract defines "daily deliverability" as "the average daily rate at which the well can lawfully deliver gas under the conditions of this contract as determined by a 5–day test, such 5–day tests to be conducted by [Arkla] from time to time as oper-ations may indicate to be necessary." This "daily deliverability" figure is then multiplied by one-half to determine the "average daily volume." All of the "average daily volumes" are cumulated to find the "contract annual volume" which is the minimum amount that Arkla would be required to "take-or-pay" for that year.

er amount. Arkla further argues that its minimum volume obligation should not be fixed as of the date of the alleged repudiation, but should be based upon evidence as to the physical ability of the wells to produce in the future assuming the wells will be produced. Moreover, Arkla contends the well physically could not produce the amount of gas indicated by the last deliverability test over the term of the contract.

In response, Roye Realty claims the volume of gas in the ground or producible over the remainder of the contract term is irrelevant after the buyer's repudiation of both the "take" obligation and the "pay" obligation and in any event Arkla has no evidence that it would have taken any gas during the remaining term of the contract.

Realizing that the courts of this state have not yet answered the precise question of law as to damages in a case such as this one, the United States District Court for the Western District of Oklahoma has now certified the following question of law pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, § 1601, et seq.:

"What is the measure of damages under a take-or-pay gas purchase contract where the seller alleges an anticipatory repudiation by the buyer and buyer alleges that had it elected to 'take' gas, seller could not have physically delivered gas over the entire term of the contract? *See Golsen v. ONG W., Inc.,* 756 P.2d 1209, 1213 (Okla.1988); *Manchester Pipeline Corp. v. Peoples Natural Gas,* 862 F.2d 1439, 1441 & n. 1, 1443–49 (10th Cir.1988) ("market-out" provision distinguishes case from typical take-or-pay contract); *Universal Resources Corp. v. Panhandle E. Pipe Line Co.,* 813 F.2d 77, 78–80 & n. 4 (5th Cir.) (purpose of take-or-pay contract is apportionment of risks), *reh'g denied en banc,* 821 F.2d 1097 (1987) (per curiam); *International Minerals & Chem. Corp. v. Llano, Inc.,* 770 F.2d 879, 882 (10th Cir.1985), *cert. denied,* 475 U.S. 1015 [106 S.Ct. 1196, 89 L.Ed.2d 310] (1986); *Sabine Corp. v. ONG W., Inc.,* 725 F.Supp. 1157, 1184–85, 1190–91 (W.D.Okla.1989); *Louisiana Gas Sys. v. Tee Oil, Inc.,* No. 86–2594

(E.D.La. June 30, 1987) (1987 WESTLAW 13224 (granting motion in limine regarding reserves); 12A Okla.Stat. § 1–102(3) ('The effect of provisions of this Act may be varied by agreement....'); 12A Okla. Stat. § 1–106 (fundamental objective of UCC remedies is to place 'the aggrieved party ... in as good a position as if the other party had fully performed.'); 12A Okla.Stat. § 2–107(1); 12A Okla.Stat. § 2–708(2) (provides for lost profits, costs, and mitigation); 12A Okla.Stat. § 2–719(1)(a) ('[T]he agreement may provide for remedies in addition to ... those provided in this Article and may ... alter the measure of damages recoverable under this Article.'); *see also Prudential Ins. Co. v. Faulkner,* 68 F.2d 676, 679–81 (10th Cir.1934) (waiver of election of remedies); *accord Stewart v. Bowser,* 178 Okla. 382, 62 P.2d 1195, 1195 (1936) (Court's fifth syllabus) (per curiam), and *Washoma Petroleum Co. v. Eason Oil Co.,* 173 Okla. 430, 49 P.2d 709, 709–10 (1935) (Court's fifth syllabus) (per curiam); *see generally* 17 *Am.Jur.2d (Contracts)* § 363, at pp. 805–06 (1964), *cited in,* 22 *Am.Jur.2d (Damages)* § 126, at p. 126 n. 14 (1988); 11 *Williston on Contracts* § 1407, at pp. 594–96 (3d ed. 1968)."

We are not asked to determine whether Arkla repudiated the contract. Only in issue before us is the measure of damages if Roye Realty establishes at trial that Arkla repudiated the take-or-pay gas purchase contract. We hold that the correct measure of damages in this situation is governed by Oklahoma's Uniform Commercial Code (UCC), specifically 12A O.S.1981, § 2–708.

## I.

**THE UNIFORM COMMERCIAL CODE APPLIES TO GAS PURCHASE CONTRACTS AND PROVIDES THE MEASURE OF DAMAGES FOR ANTICIPATORY REPUDIATION OF A TAKE–OR–PAY PROVISION IN SUCH GAS PURCHASE CONTRACTS.**

A take-or-pay gas purchase contract relates to the sale of natural gas

reserves to be severed from realty by the seller. Therefore, under 12A O.S.1981, § 2–107 [2], such a contract is governed by the provisions of the Oklahoma Uniform Commercial Code (UCC), 12A O.S.1981, §§ 1–101 et seq. *Golsen v. ONG W., Inc.,* 756 P.2d 1209, 1212, and 1220, (Kauger J., concurring) (Okla.1988); *Manchester Pipeline Corp. v. Peoples Natural Gas Co.,* 862 F.2d 1439, 1444 (10th Cir.1988). Relevant case law further indicates that § 2–708 of the UCC provides the measure of damages for anticipatory repudiation of a take-or-pay gas purchase contract.

In *Golsen,* working interest owners in a well sued on a take-or-pay gas purchase contract when the purchaser failed to take or .pay under the contract. The trial court found that the gas purchaser's performance was excused under the *force majeure* clause of the contract, and judgment was entered denying recovery of the deficiency payments. In holding that the inability of the gas purchaser to resell the gas at a profit was not a "failure of market" under the *force majeure* clause, this Court noted a few UCC provisions regarding the seller's damages upon breach of contract. We said:

"The policy of the law in this state is reflected in the sales article of the Uniform Commercial Code. Therein damages for breach of contract are specified around the general principle of the difference between the contract price and market price. In regard to seller's damages see for example 12A O.S.1981 §§ 2–706(1) and 2–708(1).... After resale of the contracted goods the seller may recover the difference between the resale price and the contract price together with incidental damages. 12A O.S.1981 § 2–706(1)." *Golsen,* 756 P.2d at 1212.

Although the Court did not specifically hold that §§ 2–706(1) and 2–708(1) were the measure of damages for repudiation of a take-or-pay gas purchase contract, we did note that these provisions show that the UCC does not support the theory that inability to sell gas at a profit excuses performance under the contract. However, the Court did state that § 2–708(1) reflects the policy of this state towards damages in such situations. Section 2–708(1) reads:

"Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (Section 2–723), *the measure of damages for* non-acceptance or *repudiation by the buyer is the difference between the market price* at the time and place for tender *and the unpaid contract price* together with any incidental damages provided in this Article (Section 2–710), but less expenses saved in consequences of the buyer's breach." (Emphasis added)

The Comment to § 2–708 notes that the UCC does not require the seller to resell upon repudiation by the buyer, but if the seller elects to resell, damages are measured by § 2–708. Because the provisions of the UCC apply to gas purchase contracts, we hold that the measure of damages for anticipatory repudiation of both the take and the pay obligations in a take-or-pay gas purchase contract is the difference between the market price at the time when the aggrieved party learned of the repudiation and the unpaid contract price. 12A O.S.1981, §§ 2–706, 2–708 and 2–723.

Citing *Golsen* and 12A O.S.1981, § 2–107, the court in *Manchester Pipeline Corp. v. Peoples Natural Gas,* 862 F.2d 1439 (10th Cir.1988), determined damages for anticipatory repudiation of a gas purchase contract are governed by the UCC. In *Manchester,* the parties negotiated a gas purchase contract which contained a take-or-pay clause and a "market-out" provision—a clause which allows the gas purchaser to reduce the price paid for gas taken in order to remain competitive in the gas market. The parties disagreed as to whether a contract was ever executed.

---

**2.** Section 2–107 provides:

"(1) A contract for the sale of minerals or the like, including oil and gas, or a structure or its materials to be removed from realty is a contract for the sale of goods within this

Article if they are severed by the seller, but until severance, a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell."

The court found sufficient evidence to support the jury's finding of the existence of a contract.

However, the court held the jury incorrectly determined the damages for repudiation of the take-or-pay contract by People's Natural Gas (PNG) and remanded the matter for consideration of damages under 12A O.S.1981, §§ 2–708 and 2–723(1). Section 2–708, as noted above, measures damages for repudiation according to the difference between the market price at the time and place for tender and the unpaid contract price. Section 2–723(1) gives guidance on determining the market price at the time and place for tender. It provides:

> "If an action based on anticipatory repudiation comes to trial before the time for performance with respect to some or all of the goods, any damages based on market price (Section 2–708 or Section 2–713) shall be determined according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation."

The Oklahoma Code Comment to § 2–723 reads:

> "(1) There are no previous Oklahoma decisions. This changes the rule as previously stated in Williston On Sales, Section 587, which says that when an action for anticipatory breach comes to trial before performance date the measure of damages is the difference between the contract price and the market value at the date fixed in the contract for performance. Thus, the jury must speculate by attempting to predict what the future market value will be. The Commercial Code rule is more certain and far easier to apply...."

Based upon these provisions and the "virtue of certainty" which they provide, the court concluded that "Manchester's damages should be calculated by reference to the difference between the Manchester–PNG contract price and the market price of gas under a similar long term contract at the time Manchester learned of PNG's repudiation." 862 F.2d at 1448. The court further held that the market-out provision would need to be considered as it would affect the determination as to what the market price was at the time Manchester learned of the repudiation.

In an unreported decision, the United States District Court for the Northern District of Oklahoma also concluded that § 2–708(1) provides the measure of damages for repudiation by the buyer of the take-or-pay provision of a gas purchase contract. *Dyco Petroleum Corp. v. ANR Pipeline Co.*, No. 86–C–1097–E (August 29, 1990). In applying the UCC to the matter, the trial court rejected the gas seller's argument that the measure of damages was governed by "the law of the case" and 23 O.S.1981, § 22 which provides:

> "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

The trial court determined that the gas purchaser's obligation to pay deficiency payments when they fail to take gas was governed by the UCC rather than § 22 because it is an integral part of the contract for sale and not a separate obligation of the gas purchaser "to pay money only." Further finding that the take-or-pay obligation is a provision for alternative performance and not a measure of damages after the breach, the court concluded that using the deficiency payment obligation as the measure of damages was essentially granting specific performance. Such a remedy was, in the court's view, inappropriate. Hence, the court sustained the gas purchaser's partial summary judgment, finding § 2–708(1) provides the proper measure of damages.

Roye Realty acknowledges that the UCC applies herein, and notes certain UCC provisions which, Roye Realty argues, lead to the result that the gas purchase contract provides the measure of damages. First, the UCC provides that sales agreements governed by it "may provide for *remedies* in addition to or in substitution for those provided in this Article and may limit or *alter the measure of damages recoverable under this Article ...*" 12A O.S.1981,

§ 2–719(1)(a) (Emphasis added). Additionally, 12A O.S.1981, § 1–102(3) provides that the "effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act...." Furthermore, the remedies provided by the UCC are to be "liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed...." 12A O.S.1981, § 1–106(1). Using these provisions and Oklahoma case law as support, Roye Realty asserts the gas purchase contract provides an alternate measure of damages which places Roye Realty in the same position as if Arkla had taken and paid for gas as required by the contract, and hence, § 2–708 does not apply to this contract. Roye Realty's reasoning is as follows.

The contract is one for alternative obligations, the first being to take and pay for a minimum quantity of gas. *International Minerals & Chem. Corp. v. Llano, Inc.*, 770 F.2d 879, 882 (10th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 310 (1986); *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677 (10th Cir.1991). When Arkla does not perform the first alternative obligation, it then must make deficiency payments with the option to recoup the paid for gas later. Under Oklahoma law, a party making alternative promises in a contract may elect which alternative he will perform as long as he makes such election before default, but if the promisor fails to make such election in time, then the promisee may chose which alternative to accept. *Washoma Petroleum Co. v. Eason Oil Co.*, 173 Okl. 430, 49 P.2d 709 (1935). *See also Prudential Ins. Co. of Am. v. Faulkner*, 68 F.2d 676, 679–81 (10th Cir.1934) ("One who repudiates his obligation under a contract cannot thereafter exercise an election contained in its provisions."); *contra* 17A *Am.Jur.2d (Contracts)* § 619 (1991) and 22 *Am.Jur.2d (Damages)* § 126 (1988).

Since Arkla elected not to perform the first alternative obligation, and refuses to perform it now, Roye Realty concludes that the right to elect which alternative performance Arkla must perform has shifted to Roye Realty. Thus, Roye Realty asserts that despite the specific provisions of the UCC on the measure of damages, it is entitled to damages in the amount of the deficiency payments Arkla was required to make under the second alternative performance.

To support this argument, Roye Realty also points to *Prenalta Corp. v. Colorado Interstate Gas Co.*, supra. In *Prenalta*, the Tenth Circuit, applying Wyoming law, reversed the summary judgment granted in favor of Colorado Interstate Gas Company, the purchaser under a take-or-pay contract with Prenalta. The trial court determined that Prenalta failed to plead the proper measure of damages for *breach* of the take-or-pay obligation because Prenalta's remedy lies in Wyo.Stat. § 34.1–2–708(b) (1991) which provides for "lost profits" to be the measure of damages under certain circumstances.

The appellate court agreed that the UCC applied to the contract, but held that the deficiency payment provision expressed the intent of the parties to "fashion a specific remedy for breach by requiring CIG to pay the value of the shortfall." Citing Wyo. Stat. §§ 34.1–1–102(c) and 34.1–2–719(a)(i) (1991), [Wyoming's UCC versions of §§ 1–102(3) and 2–719(1)(a) ], the court found the UCC permitted the parties to provide remedies other than those under the UCC in their contracts. Since the deficiency payment was the alternative left for Colorado Interstate Gas Company to perform when it failed to take and pay for gas, the court concluded, citing 5 A. Corbin, *Corbin on Contracts* § 1085 (1964), infra, that the deficiency payment obligation provided the measure of damages. We cannot adopt this conclusion.

▮ First, the deficiency payment obligation is neither a *remedy* for breach of the first alternative performance nor a clause which *alters* or *limits* the measure of damages. *Universal Resources Corp. v. Panhandle E. Pipe Line Co.*, 813 F.2d 77, 80, fn. 4 (5th Cir.), *reh'g denied en banc*, 821 F.2d 1097 (1987); *Sabine Corp. v. ONG W., Inc.*, 725 F.Supp. 1157, 1184 (W.D.Okl.1989); *Resources Investment*

*Corp. v. Enron Corp.*, 669 F.Supp. 1038, 1041 (D.Colo.1987). Therefore, Roye Realty's reliance upon § 2–719 and *Prenalta* is misplaced.

■■■ Moreover, the deficiency payment is not a liquidated damages provision which sets the amount of damages when Arkla breaches its obligation to take and pay for gas. *Id.* Because there·is a second alternative available for Arkla to perform, failure to take and pay for gas merely constitutes a decision not to perform the first alternative obligation and *is not a repudiation of the contract. Repudiation of the contract does not occur until Arkla also refuses to make the required deficiency payments.* Hence, the deficiency payment obligation is not a provision designed to provide the measure of damages when Arkla fails to take and pay for gas under the contract. Rather, it is a portion of the overall obligation which Roye Realty alleges Arkla anticipatorily repudiated.

Professor Corbin points this out when he observes:

"An alternative contract may be so drawn as to limit the power of the promisor to discharge his contractual duty by performing one of the alternatives to a definite period of time, after the expiration of which only the other alternative is. available to him. After the expiration of the specified period, the obligation of the promisor becomes single and the contract is no longer alternative.... Such a contract as this is never an alternative contract at the time of breach." 5 A. Corbin, *Corbin on Contracts* § 1085, at 469–71 (1964). *See also Prenalta Corp. v. Colorado Interstate Gas Co.*, supra.

Thus, once the one year period has elapsed and Arkla has failed to take and pay for gas, the contract is treated as one for a single obligation, to wit, payment of the deficiency amount.

Professor Corbin continues by stating that the promisee must estimate his damages according to the second alternative which now is deemed the only obligation. *Id.* It is upon this basis that the court in *Prenalta* held the deficiency payments to be the measure of damages for *breach* of the take-or-pay provision. However, the treatise further notes that when the second alternative is payment of a sum of money, special treatment is required. *See* 5 A. Corbin, *Corbin on Contracts* § 1081, at 461–62 (1964). Professor Corbin concludes that contrary to the general measure of damages for breach of an alternative contract, there is no reason for laying down a rule which requires damages for failure to elect performance between the alternatives to be estimated according to the sum of money. *Id.* Rather, the more appropriate measure of damages should be in accordance with the less valuable of the two alternatives which is usually the market value of the specific alternative. *Ibid.* Hence, our conclusion finds support in academia as well as the specific statutory provisions.

As for the effect of 12A O.S.1981, § 1–102(3), we note that there is no indication in the take-or-pay provision of the contract that its terms are intended to vary the effect of provisions of the UCC. Moreover, by selling the gas on the open market and utilizing the § 2–708(1) measure of damages to get the difference between the market price and the contract price, Roye Realty will obtain the same price for its gas as if Arkla would have fully performed. Thus, the purpose of § 2–719 will be fulfilled.

Roye Realty further contends that the purpose of take-or-pay provisions and the intent of the parties thereto also indicate that the best measure of damages for repudiation is the deficiency payment amount. Roye Realty asserts that by entering into the contract the parties intended to allocate risks. Since the risk that Arkla took by entering into the contract has now occurred, i.e., market demand and market price have fallen below the amount agreed to by the parties in the contract, Arkla must pay under the contract. As support, Roye Realty points to *Universal Resources Corp. v. Panhandle E. Pipe Line Co.*, supra, wherein the Fifth Circuit Court of Appeals held that the purpose of a take-or-pay contract is to apportion the risks.

The parties in that case entered into a gas purchase contract which contained a take-or-pay provision. Based upon geological studies, the field reserves, well capabilities and Panhandle's projected sales levels, the gas purchaser (Panhandle) determined that the gas producer (URC) would not be able to supply both the contractual quantity for the remaining term of the contract and also the makeup gas in sufficient quantities to permit full recoupment of deficiency payments. Pursuant to § 2.609 of Texas's version of the UCC,[3] Panhandle made written demand on URC for assurance that URC would provide makeup gas or refund deficiency payments. URC refused to make such assurance, and in turn, Panhandle refused to make deficiency payments under the contract.

URC brought suit for breach of contract, and the court held that Panhandle's fears that URC would not be able to fully perform the contract did not rise to a level of "reasonable insecurity" to justify refusing to make deficiency payments. The court further refused to allow extrinsic evidence of the parties' intent regarding the effect of the take-or-pay provision because the purpose and intent of the contract was unambiguous. Such purpose, according to the court, was as follows:

"The purpose of the take-or-pay clause is to apportion the risks of natural gas production and sales between the buyer and seller. The seller bears the risk of production. To compensate seller for that risk, buyer agrees to take, or pay for if not taken, a minimum of gas. The buyer bears the risk of market demand. The take-or-pay clause insures that if the demand for gas goes down, seller will still receive the price for the Contract Quantity delivered each year." 813 F.2d at 80. *See also Kaiser–Francis Oil Co. v. Producer's Gas Co.,* 870 F.2d 563, 566 (10th Cir.1989) (quoting *Universal Re-*

*sources Corp. v. Panhandle E. Pipe Line Co.,* supra) and *Resources Investment Corp. v. Enron Corp.,* 669 F.Supp. 1038, 1040–1041 (D.Colo.1987).

Despite this understanding of the contract's purpose, the court held that *"[t]he take-or-pay clause is a promise in the Agreement, not a measure of damages after breach ..."* 813 F.2d at 80, fn. 4 (Emphasis added). *See also Resources Investment Corp. v. Enron Corp.,* supra.

Other courts have noted that take-or-pay clauses in gas purchase contracts are designed to apportion the risks of supply and demand. *RJB Gas Pipeline C. v. Colorado Interstate Gas Co.,* 813 P.2d 1, 10–11 (Okl.App.1989), *cert. denied,* (Okl.1990); *International Minerals & Chem. Corp. v. Llano, Inc.,* 770 F.2d 879, 882 (10th Cir. 1985) (applying New Mexico law), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1196, 89 L.Ed.2d 310 (1986); *Louisiana Gas Sys., Inc. v. Tee Oil, Inc.,* No. 86–2594, 1987 WESTLAW 13224 (E.D.La. June 30, 1987).

Although we agree that take-or-pay contracts were designed to allocate the risks involved in gas production and marketing, we cannot accede to the view that such allocation of risk is determinative of the measure of damages for anticipatory repudiation of the contracts. The deficiency payment obligation is merely a promise from Arkla to compensate Roye Realty for Roye Realty's promise to take the gas off the public market and sell the gas produced from the designated wells exclusively to Arkla. Arkla's refusal to make the deficiency payments is nothing more than reneging on its promise to compensate. The fact that Arkla took a risk that the market might become depressed when Arkla made the promise does not result in damages for repudiation of that promise being measured according to the promise. Rather,

---

**3.** Oklahoma's version of this statute, 12A O.S. 1981, § 2–609, entitled "Right to Adequate Assurance of Performance," reads, in pertinent part, as follows:

"(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for inse-

curity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return."

the legislature has provided a specific statutory measure of damages for anticipatory repudiation of the take-or-pay obligation.

## II.

### ONCE BUYER REPUDIATES ITS OBLIGATION TO TAKE OR PAY, SELLER'S INABILITY TO PHYSICALLY DELIVER GAS HAS NO BEARING UPON THE MEASURE OF DAMAGES.

■ Having concluded that the measure of damages for repudiation is provided in the UCC, we must now determine whether the gas producer's alleged inability to tender gas over the entire term of the contract has any bearing on those damages. Arkla claims that even had it elected to take and pay for gas under the contract, Roye Realty could not have physically delivered the required gas over the entire term of the contract because the well's reserves would be depleted. Arkla bases this contention upon the most recent deliverability tests run on the wells prior to the alleged repudiation which indicate a higher deliverability than previous tests had indicated.

Roye Realty points out that Arkla's argument assumes that Arkla will take the minimum amount of gas each remaining year of the contract and that this assumption is erroneous since Arkla has refused to take now. However, neither assertion fully accounts for the nature of the contractual promises. The deficiency payment portion of the contract states that if Buyer does not take and pay for the annual minimum amount of gas which Buyer is obligated to receive, "and the annual minimum *was available and tendered by Seller for delivery* hereunder in accordance with the provisions of this contract," then Buyer must make the required deficiency payments. (Emphasis added). Under the contract Roye Realty is only required to be willing and able to perform at the time of Arkla's repudiation, and after such repudiation occurs, Roye Realty need not prove its ability to perform under the contract in order to recover damages for the anticipatory repudiation. This is seen in general contract law in Oklahoma which holds:

"The rule is well settled that where either party to a contract gives notice to the other that he will not comply with its terms, the other need not, in an action for damages for the breach, either plead or prove a tender of performance on his part." *Colonial Sugar Co. v. Waldrep*, 121 Okl. 31, 246 P. 623, 624 (1926).

Moreover, in the Court's fifth syllabus of *Stewart v. Bowser*, 178 Okl. 382, 62 P.2d 1195 (1936), we held that the "[i]nability of plaintiff to comply with [the] contract *subsequent to renouncement thereof by defendant* does not deprive plaintiff of right to damages for loss of prospective profits." (Emphasis added). Professor Corbin states it in the following manner:

"In an action for breach by an unconditional repudiation it is still a condition precedent to the plaintiff's right to a judgment for damages that he should have the ability to perform all such conditions. If he could not or would not have performed the substantial equivalent for which the defendant's performance was agreed to be exchanged, he is given no remedy in damages for the defendant's non-performance or repudiation. Of course, the willingness and ability that remains a condition precedent in spite of the defendant's repudiation, is willingness and ability to perform if there had been no repudiation. The defendant's wrongful repudiation justifies the plaintiff in taking him at his word and at once taking steps that may make subsequent performance impossible. *The willingness and ability to perform need not continue after the repudiation; it is merely required that they should have existed before the repudiation and that the plaintiff would have rendered the agreed performance if the defendant had not repudiated.*" 4 A. Corbin, *Corbin on Contracts* § 978, at 924–25 (1951) (Emphasis added)

Hence, the contractual provision imposing deficiency payments upon Arkla when Arkla chooses not to take gas during a particular year comports with the contract

law of this state, as well as the understanding of such provisions by academia.

Moreover, even though the UCC does not contain a specific provision concerning this issue, 12A O.S.1981, § 2–610 provides three remedies that the "aggrieved party" may resort to when the other party repudiates the contract with respect to a performance not yet due. Those remedies include the right of the aggrieved party to "suspend his own performance...." *Id.* The Oklahoma Code Comment to § 2–610 states that "in any event, the repudiation excuses his own performances, and permits him to suspend performance." The Comment further notes that § 2–610 is in accord with previous Oklahoma law, citing *Waggoner Refining Co. v. Bell Oil & Gas Co.*, 117 Okla. 55, 244 P. 756 (1926), which held that "[a]ny conduct of the party to a contract * * * that shows that he does not intend to abide by the terms of the contract in a material particular will excuse the [other] party from his obligation to perform." 244 P. at 758 (quoting Williston on Contracts, § 875). Thus, the UCC offers some support for the case law which governs this issue.

In addition, the court in *Universal Resources Corp. v. Panhandle E. Pipe Line Co.*, supra, held that experienced buyers of natural gas, as Arkla in the case at bar, are "deemed to have known of the risk that [they] might not be able to recoup deficiency payments by taking makeup gas." 813 F.2d at 79. The court further stated that the definition of makeup gas contemplates that the buyer may pay for gas that he never receives. On this basis, the court concluded that the gas purchaser was unreasonable in refusing to make deficiency payments merely because the seller could not assure the purchaser that gas reserves were sufficient to cover the future requirements of the contract plus makeup gas for which the deficiency payments would prepay. *See also Louisiana Gas Sys., Inc. v. Tee Oil, Inc.*, No. 86–2594, 1987 WESTLAW 13224 (E.D. La. June 30, 1987), wherein the court granted a motion in limine to exclude evidence regarding reserves because the gas purchaser "accepted the risk that actual reserves might be

less than 'seller's delivery capacity' as computed in the contract."

The express language of the take-or-pay contract and Oklahoma law relating to anticipatory breach support a finding that the measure of damages is unaffected by the seller's future inability to deliver gas. If the seller is capable of performance on the date of the breach, the damages recoverable will not be diminished.

QUESTION ANSWERED.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER, and WATT, JJ., concur.

OPALA and SUMMERS, JJ., concur in part, dissent in part.